317 So.2d 814 (1975)
Pauline T. RAINES et al., Appellants,
v.
PALM BEACH LEISUREVILLE COMMUNITY ASSOCIATION, a Florida Corporation Not for Profit, et al., Appellees.
No. 74-1002.
District Court of Appeal of Florida, Fourth District.
July 25, 1975.
Rehearing Denied September 4, 1975.
Wood, Cobb & Robinson, W. Palm Beach, and Robert T. Scott, Gunster, Yoakley, Criser, Stewart & Hersey, Palm Beach, for appellants.
Cecil H. Albury, Carlton, Brennan, McAliley, Albury & Hayskar, West Palm Beach, for appellees-Vastine, Shorter, Drasal, Smith, Sturges, Pagllard and Phillips.
*815 Andrew I. Friedrich and H.L. Cooper, Jr., O'Connell & Cooper, West Palm Beach, for appellee-Palm Beach Leisureville Community Association.
WALDEN, Judge.
This appeal concerns the legal interpretation to be given to certain condominium documents. The dispute lies in the area of maintenance  who shall be financially responsible for it and to what degree. As shall be shown, there are two conflicting provisions. Can they be reconciled or does one take precedence over the other?
For background, we describe the condominium development. It, somewhat unusually, consists of two kinds of habitations. On one hand, there are individual separate one family dwellings, each located on a single lot. We shall call the owners of these dwellings "improved lot owners." On the other hand, there are multi-storied condominium apartment buildings, each building containing 24 or more apartments, with each building located on a single lot. We shall call the owners of these apartments "condominium unit owners."
Arrayed in this litigation as plaintiffs-appellants are the condominium unit owners versus defendants-appellees, the improved lot owners and Palm Beach Leisureville Community Association.[1]
The condominium unit owners brought suit, complaining that they were being improperly assessed for certain maintenance costs.[2] The trial court held for the improved lot owners and the Association, basing its decision on an interpretation of critical portions of the condominium documents, and said:
"1. The Defendant, Palm Beach Leisureville Community Association, in performing its duties as required by the various Declarations of Restrictions pertaining both to Improved Lots and Condominium Apartment is assessing all costs of maintenance, upkeep and replacement of lawns, sprinkler systems and exterior building maintenance equally against each Improved Lot and Condominium Apartment owner.

"2. That the method of assessment described above is in accordance with the language and intent of the governing documents." (Emphasis added.)
Upon a study of the documents, we reverse.
The critical portions of the condominium unit declarations are Paragraphs 6 and 9.
Paragraph 6[3] clearly provides the condominium unit owners shall be liable for:
(1) A "pro-rata" share of the cost of sprinkler system operation.

*816 (2) Maintenance alteration and repair of the sprinkler system within the condominium apartment lot.[4]
(3) A 1/32 share of lawn maintenance and care within the lot.[5]
(4) A 1/32 share of exterior maintenance and repair to the condominium building upon the lot.
Paragraph 6 provides for apportionment equally to the condominium unit owners within a condominium building of the cost of caring for that building and the surrounding grounds comprising their lot. The clause "pro-rata share as hereinafter set forth", read in context within Sections A, B and C of that paragraph, refers only to the operation of the sprinkler system over the whole project area, and plaintiffs do not contest their obligation to share equally with improved lot owners in the expenses of that operation.
Paragraph 9, entitled "pro-rata share defined" is, however, not in accord with Paragraph 6 as to the obligations of condominium unit owners.[6] In essence, Paragraph *817 9, with a policy statement, says that the pro-rata share of a condominium unit owner shall be 32/1138th (or whatever numberator and denominator prevails at the time, depending respectively upon the size of each condominium building and upon the total amount of dwelling in the project area, both condominium and single family), and that each condominium unit owner shall be liable for this "pro-rata" share of Paragraph 6 expenses. This clause is in direct conflict with the directives of Paragraph 6. It is clear the condominium unit owners cannot be liable for both a 1/32nd share of Paragraph 6 expenses on their own lot and a 32/1138th share of Paragraph 6 expenses over the whole project area.
In construing this contract in favor of the plaintiffs condominium unit owners, we apply to the rule directing that a specific clause takes precedence over a general clause. Cypress Gardens Citrus Products, Inc. v. Bowen Bros., Inc., 223 So.2d 776 (2d DCA Fla. 1969). Aetna Life Ins. Co. v. White, 242 So.2d 771 (4th DCA Fla. 1970):
"Further, where there are general and special provisions in a contract relating to the same thing, the special provisions will govern in its construction over matters stated in general terms." 242 So.2d at 773.
It is only reasonable that condominium unit purchasers properly relied upon the specific language in Paragraph 6, Sections A, B and C, and concluded that they were liable for a 1/32nd share of the described expenses, even though Paragraph 9 was in *818 conflict. The reference in Paragraph 9 to Paragraph 6 expenses is a general one, and is applicable only to those portions of Paragraph 6 that are not exempted by specificity from that general directive. Section D of Paragraph 6, for example, deals with recreation lands.[7] The condominium unit owners do not contest their obligation to pay a Paragraph 9 pro-rata share of expenses dealing with recreational lands, and it is notable that Section D makes reference to the "pro-rata share as hereinafter defined," as did the portion of Section A, dealing with sprinkler system operation.
The Association and the improved lot owners have urged that the whole declaration must be considered and the general intent of the contract should prevail. This proposition is a basic one and unquestionably valid. Lalow v. Codomo, 101 So.2d 390 (Fla. 1958); see 3 Corbin on Contracts, Purposes and Methods § 549 (1960); 7 Fla.Jur., Contracts § 77 (1956). We feel that our interpretation is in accord with the general intent of the contract, and with the general policy statement in Paragraph 9.[8] The specific provisions of Paragraph 6, read in context with the general provisions of Paragraph 9, evidence a general intent that condominium unit owners pay for certain expenses inherent in condominium ownership,[9] and share on a pro-rata basis (as defined in Paragraph 9) those expenses which accrue to both unit and improved lot dwellers  such as recreation land maintenance.
We support this conclusion by reference to the analogous Paragraph 6 in the improved lot owner declaration, where it appears that improved lot owners are personally liable for certain maintenance singular to their position as single family residence owners. In Paragraph 6, Section A, of the improved lot owners' declaration, for example, the improved lot owner is made liable, not for a pro-rata share of the maintenance of the sprinkler system in the project *819 area, but within the subdivision.[10] In Paragraph 6, Section B, of the improved lot owners' declaration the improved lot owner is liable for a pro-rata share "as hereinafter set forth" of the lawn maintenance within the subdivision, upon recreation lands, and, notably, for the full cost of replacement of sod upon his own lot.[11] Section B also contains the statement that the purpose of this maintenance is to keep the subdivision uniform in appearance. This infers that the houses in the subdivision should be kept on a par with each other, but would not lead the improved lot owner to suppose he would in any way be liable for lawn care upon condominium building lots.
We are not unaware that a disparity exists between Paragraph 6, Section C, of the condominium unit owners' declaration and Paragraph 6, Section C, of the improved lot owners' declaration. The former requires the condominium unit owners to pay their specific fractional share of their own building maintenance, and the latter requires the improved lot owners to be liable only for their total pro-rata share of exterior maintenance and repair within their subdivision.[12] (It is notable that under the specifics of their Paragraph 6 the improved lot owners would not be lead to suppose they would in any way be liable for exterior maintenance upon condominium buildings.) If this literal situation prevailed, *820 then collections for the improved lot exterior building maintenance would not equal the total cost of that maintenance; the collection would only equal the improved lot owners' "pro-rata" share less the condominium unit owners' "pro-rata" share, as we hold the condominium unit owners are not liable under their contract for such amount.
In recognition of this disparity, and in order to respond to the general intent of the contracts  which we find to be the intention to house both condominium unit owners and improved lot owners, each to sustain certain expenses incident to this choice of accommodations, we hold the provisions of both declarations are most fairly and reasonably interpreted by requiring the condominium unit owners to be liable solely for a share equal to a fraction (the numerator of which is one, and the denominator the number of apartments in the subject building) of their Paragraph 6 expenses (except for sprinkler operation and recreation expenses which are subject to their Paragraph 9 pro-rata liability); and for improved lot owners to be liable for their fractional share (dependent upon the number of improved lots within the subdivision) of their Paragraph 6 expenses (except for sprinkler operation, sod replacement on individual lots, and recreation land expenses which are subject to Paragraph 10 pro-rata liability, as Paragraph 10 defines fractional pro-rata share in the improved lot owners' declaration).
In conclusion, we find, although the issue is close, that the trial court was in error in finding the condominium unit owners liable for all their Paragraph 6 expenses in the project area on a pro-rata basis as defined in their Paragraph 9. Reversed and remanded with directions for further proceedings consistent herewith.
Reversed and remanded.
MAGER, J., and MOE, LEROY H., Associate Judge, concur.
NOTES
[1] A management association whose Board of Directors is elected by all Leisureville residents.
[2] The parties stipulated that the three items of service in issue were:

(1) exterior building maintenance and repair of buildings,
(2) lawn maintenance and spraying,
(3) sprinkler system maintenance, alteration and repair.
[3] RESERVATIONS FOR LAWN, SPRINKLER SYSTEM MAINTENANCE, ETC.
"A. Sprinkler System, The COMMUNITY ASSOCIATION shall operate, maintain, repair and alter a fresh water sprinkler system constructed over, through and upon all of the LOTS, accordingly, there is hereby reserved in favor of the COMMUNITY ASSOCIATION the right to operate, maintain, repair and alter a fresh water sprinkler system over, through and upon the LOTS, and each APARTMENT OWNER shall be liable to the COMMUNITY ASSOCIATION for his prorata share, as hereinafter set forth, of the reasonable cost of operation of said system, and the maintenance, alteration and repair of the portion of said system lying within the LOT.
"B. Lawn Maintenance and Spraying. The COMMUNITY ASSOCIATION shall maintain and care for all lawns, trees and shrubbery upon the LOT, accordingly there is hereby reserved in favor of the COMMUNITY ASSOCIATION the right to enter over, through and upon all of the LOTS for the purposes of maintaining and caring for the lawns, shrubbery and trees located hereon. Each APARTMENT OWNER is hereby made liable to the COMMUNITY ASSOCIATION for a one-thirty-second fractional share of the reasonable cost of all such maintenance and care from time to time performed by the COMMUNITY ASSOCIATION. "Maintenance and care" within the meaning of this subparagraph B ... Each such owner shall be further liable to the COMMUNITY ASSOCIATION for a one-thirty-second fractional share of the full reasonable replacement of sod, trees and shrubbery (as the same shall be determined from time to time by the BOARD in its sole discretion) upon the LOT. In the exercise in this regard, the BOARD shall be governed by the principal that all lawns shall be fully maintained, free from unsightly bald spots or dead grass, and uniform in texture and appearance with surrounding lawns in the PROJECT AREA, and that dead or dying trees and shrubbery shall be replaced with healthy plants.
"C. Exterior Maintenance and Repair of Buildings. The exterior of the building located on the LOT shall be maintained and repaired on a periodic basis by the COMMUNITY ASSOCIATION, and there is hereby reserved in favor of the COMMUNITY ASSOCIATION the right to enter upon all of the LOT and building located thereon for the purpose of conducting a periodic program of exterior maintenance and repair, which maintenance and repair shall include, but shall not be limited to repainting and repair of exterior walls, shutters, trim, eaves, roofs, or any portion of the foregoing. The times when such maintenance and repair and the extent thereof shall be determined by the BOARD in its sole discretion. Each APARTMENT OWNER is hereby made liable to the COMMUNITY ASSOCIATION for a one-thirty-second fractional share of the reasonable cost of the conduct of such periodic maintenance and repair from time to time performed by the COMMUNITY ASSOCIATION. The COMMUNITY ASSOCIATION shall not be responsible for repairing or replacing a building or structure which in the BOARD'S opinion, shall have been destroyed, nor shall the COMMUNITY ASSOCIATION be responsible for repairs beyond the exterior surfaces of buildings, all such repairs being the responsibility of the APARTMENT OWNER as provided by Declaration of Condominium relating to this APARTMENT." (Emphasis added.)
There is a separate declaration with an analogous paragraph for improved lot owners. We deal, initially, only with the unit owners' declaration. It was the language in that declaration that formed the contract between sellers  who are not parties in this suit  and the unit owners.
[4] The term "Lot" is defined in the unit declaration as "the foregoing described lands." Those lands comprise the parcel upon which the condominium building is constructed.
[5] There are 32 units within the condominium affected by the declaration under discussion.
[6] PRORATA SHARE DEFINED. DEVELOPER shall cause the LOT to be made subject to the condominium form of ownership as provided by Chapter 711, Florida Statutes, said condominium to consist of one two-story apartment building containing thirty-two APARTMENTS.
The condominium is to be constructed and maintained under the Palm Beach Leisureville plan of community-wide maintenance applicable throughout the PROJECT AREA. According and in order that all buildings, structures and improvements within the PROJECT AREA may be maintained to an equally high degree by one organization, and in order that the cost of such maintenance may be kept low through bulk contracting, the COMMUNITY ASSOCIATION has been incorporated to provide maintenance services throughout the PROJECT AREA. And since the maintenance program which may be a direct benefit to one group of residence buildings will also serve indirectly to benefit all portions of the PROJECT AREA, the cost of such maintenance shall be borne equally by the owners of the several lots in the subdivided portions of the PROJECT AREA, together with the APARTMENT OWNERS. Prior to the filing of this Declaration of Restrictions the DEVELOPER caused lands within the PROJECT AREA to be platted into subdivisions containing a total of 1,106 lots, each of which bears an equal share of the expenses incurred by the COMMUNITY ASSOCIATION in the performance of its services and obligations. There being 1,106 previously platted lots and apartments within the PROJECT AREA and thirty-two (32) APARTMENTS to be constructed upon the LOT, the DEVELOPER hereby establishes a new fractional prorata share with respect to the following subdivisions:
* * * * *
said new fractional prorata share being a one-one-thousandth-one-hundred-thirty-eighth (1/1138th) share. Until such time as additional lands in the PROJECT AREA are platted and lots therein improved by DEVELOPER, each Improved Lot (as defined in the several declarations of restrictions referred to below) in the foregoing referred to subdivisions shall be liable for a one-one-thousandth-one-hundred-thirty-eighth (1/1138th) share of all expenses incurred by the COMMUNITY ASSOCIATION in its performance of its services and obligations under paragraph 6 of the following declarations of restrictions, to-wit:
* * * * *
which fractional share is hereby defined as the Prorata Share. The Prorata Share which shall be applicable to the LOT, as defined herein shall be thirty-two-one-thousandth-one-hundred-thirty-eighth (32/1138th). The respective prorata shares herein defined and established shall continue until such times as DEVELOPER shall cause additional lands in the PROJECT AREA to be subdivided of record, or declares said lands to be subject to the condominium form of ownership, at which time DEVELOPER shall also file among the Public Records of Palm Beach County, Florida, a declaration of restrictions similar in substance to this Declaration, which declaration shall establish a new fractional Prorata Share which shall be equally applicable to all lots in all subdivisions created by DEVELOPER within the PROJECT AREA according to this plan, which fractional share shall then be the Prorata Share defined herein. In every such subsequent declaration of restrictions the numerator of the fractional prorata share applicable to the LOT shall be 32, and the denominator of said fractional prorata share shall be the sum total of the lots previously platted by DEVELOPER within the PROJECT AREA, together with the number of APARTMENTS created by Declarations of Condominium filed by DEVELOPER with respect to lands within the PROJECT AREA... ." (Emphasis supplied.)
[7] Recreation Lands. Each APARTMENT OWNER shall enter into a lease for an undivided one-five-thousandth fractional leasehold interest in and to certain lands within the PROJECT AREA, as well as to certain additional lands which may be made subject to said lease at a latter date, and the COMMUNITY ASSOCIATION has agreed that the operation, maintenance, repair and insuring of the buildings, structures and other improvements from time to time located thereon together with the payment of ad valorem real and personal property taxes and assessments levied thereon shall be the responsibility of the COMMUNITY ASSOCIATION acting for and on behalf of the APARTMENT OWNERS as Lessees. Accordingly, each APARTMENT OWNER is hereby made liable to the COMMUNITY ASSOCIATION for a prorate share, as hereinafter set forth, of the reasonable cost of the operation, maintenance, repair and insuring of the buildings, structures and parking facilities from time to time located upon the lands made subject to the aforesaid leases, together with a prorate share as hereinafter set forth of the ad valorem real and personal property taxes and assessments levied thereon."
[8] "And since the maintenance program which may be a direct benefit to one group of residence buildings will also serve indirectly to benefit all portions of the PROJECT AREA, the cost of such maintenance shall be borne equally by the owners of the several lots in the subdivided portions of the PROJECT AREA, together with the APARTMENT OWNERS."
[9] Taking for example the cost of exterior building maintenance, the Defendant Association has at one time assessed condominium apartment owners for the exterior building maintenance costs incurred in maintaining 1500 single family residences, as well as those costs incurred maintaining just thirteen (13) separate apartment buildings. The exterior maintenance costs as to the 1500 units would far exceed the cost of maintaining a separate condominium apartment building.
[10] IMPROVED LOTS
* * * * *
"A. Sprinkler System. The ASSOCIATION shall operate, maintain, repair and alter a fresh water sprinkler system constructed over, through and upon all of the SUBDIVISION, accordingly, there is hereby reserved in favor of the ASSOCIATION the right to operate, maintain, repair and alter a fresh water sprinkler system over, through and upon all of the SUBDIVISION and the owners of IMPROVED LOTS in the SUBDIVISION shall be liable to the ASSOCIATION for a prorate share, as hereinafter set forth, of the reasonable costs of operation of said system and the maintenance, alteration and repair of the portion of said system not lying within a LOT."
"Subdivision" is described as "the foregoing lands," and those lands comprise the property upon which the development of improved lots is found.
[11] Lawn Maintenance and Spraying. The ASSOCIATION shall maintain and care for all lawns, within the SUBDIVISION, accordingly there is hereby reserved in favor of the ASSOCIATION the right to enter over, through and upon all of the SUBDIVISION for the purpose of maintaining and caring for such lawns. Each owner of an IMPROVED LOT in the SUBDIVISION is hereby made liable to the ASSOCIATION for a PRORATA SHARE as hereinafter set forth, of the reasonable cost of all such maintenance and care from time to time performed by the ASSOCIATION... . Each such owner shall be further liable to the ASSOCIATION for a PRORATA SHARE as hereinafter set forth, of the reasonable cost of replacement of sod, (as the same shall be determined from time to time by the BOARD in its sole discretion) upon the RECREATION LANDS and for the full reasonable cost of all such required replacement upon such owner's LOT.
In the exercise of its discretion in this regard, the BOARD shall be governed by the principal that all lawns shall be fully maintained free from unsightly bald spots or dead grass, and uniform in texture and appearance with surrounding lawns in the SUBDIVISION."
[12] * * * *
The owner of each IMPROVED LOT in the SUBDIVISION is hereby made liable to the ASSOCIATION for a prorata share, as hereinafter set forth, of the reasonable cost of the conduct of such periodic maintenance and repair from time to time performed by the ASSOCIATION.
The ASSOCIATION shall not be responsible for repairing or replacing a building or structure which in the BOARD'S opinion shall have been destroyed, nor shall the ASSOCIATION be responsible for repairs beyond the exterior surfaces of the buildings, all such repairs being the responsibility of LOT OWNER."