GROSS, J.
Appellant Ibis Lakes (“Lakes”), a homeowner’s association, appeals the non-final order of the trial court granting Appellee Ibis Isle’s (“Isle”) motion to compel arbitration. We affirm, holding that an arbi-trable issue existed and that the circuit court did not err in finding that Isle had not waived arbitration.
Lakes and Isle are adjoining homeowner’s associations (“HOAs”) located within the residential community Ibis Golf & Country Club (“Ibis Golf’). Ibis Golf was constructed in two distinct residential phases. Although originally designed as one residential subdivision, each phase’s members chose to become a separate homeowners association for its respective parcel, resulting in Lakes becoming the HOA for Phase I and Isle becoming the HOA for Phase II.
Both sub-communities share a common entranceway and Isle residents must use a common roadway located on Lakes’ property to reach their residences. Since Isle derives a benefit from the use of the entryway and common roadway, Lakes and Isle agreed on June 3, 1997, to enter into a Shared Common Expense Agreement (“Agreement”) to “memorialize their desire to share the use of, access through and upon Lake Boulevard, to share the use and benefits of the Shared Common Areas and to allocate the costs for maintenance and repair of both the commonly shared portion” of the roadway and common areas.

Agreement Requirements

Under the Agreement, Lakes was to be responsible for “maintenance of and repair of the Shared Common Areas.” In performing this duty, Lakes was to follow certain budgetary procedures, such as creating an annual budget with “specific line item allocations for expenses to be shared ... by Lakes and Isles for the Shared Common Areas.” Additionally, pursuant to a later amendment to the Agreement, both HOAs assigned specific percentages of expenses to be shared:
a) 73% of Reserve for Lakes Boulevard Road Repaving;
b) 100% of Entry Landscape Maintenance
c) 93% of Street and Accent Electrical Lighting
d) 6% of Irrigation Electric;
e) 100% of Annual Flowers;
f) 100% of Entry Wall Painting;
g) 73% of General Liability Insurance; and
h) 5% of Annual Management Fee
Furthermore, within ninety days of the end of each calendar year, Lakes was to provide Isle “with a reconciliation of the actual costs of the Shared Expenses and the amount paid by” Isle.

Arbitration Clauses within the Agreement

Within the Agreement, three paragraphs define the circumstances under which either party could refer disputes arising under the Agreement to arbitration. Paragraph 9, which is inapplicable to this case, allowed arbitration “[i]n the event that Ibis Isle HOA fails in its per- *726 formanee ... regarding the payment of the Shared Expenses.”
Paragraph 10 concerned situations where Lakes defaulted in its maintenance obligations:
In the event that Ibis Lakes HOA fails in its performance of this Agreement regarding its maintenance obligations as set forth in paragraph 5 above, Ibis Isle may declare a default (“Maintenance Default”) by providing notice of same to Ibis Lakes HOA (“Notice of Maintenance Default”). Upon receipt of a Notice of Maintenance Default, Ibis Lakes HOA shall have the option to cure the default within thirty (30) calendar days or provide Ibis Isle HOA with a notice of dispute of default (“Dispute Notice”). In the event that Ibis Lakes HOA issues a Dispute Notice to Ibis Isle, in that event, the matter of the alleged Maintenance Default shall be submitted by the Parties to binding arbitration in accordance with the rules and regulations of the American Arbitration Association.
Paragraph 20 of the Agreement generally provided for binding arbitration for all disputes arising from the Agreement:
The parties hereby agree that concerning any dispute from this Agreement or the obligations of the parties to this Agreement, including but not limited to, the failure of the parties to agree pursuant to Section 7.5 hereof, shall be resolved by binding arbitration in accordance with the rules and regulations of the American Arbitration Association.
(Emphasis added).

Nature of the Dispute

On October 18, 2011, Isle filed a demand for arbitration with the American Arbitration Association to obtain a refund of $7,122.68 for overcharges made by Lakes between 2002 and 2008. Specifically, Isle alleged that Lakes breached the Agreement by improperly charging Isle for insurance coverage outside of the Shared Expenses agreement, and therefore in addition to General Liability Insurance as defined by the Agreement.
On October 27, 2011, Lakes filed a complaint to enjoin arbitration, alleging that the “[c]harge[s] for insurance coverage and/or concealing such charges!] are not issues that Lakes and Isle agreed to submit to arbitration.” Lakes argued that, under paragraph 10 of the Agreement, “only Lakes’ failure to maintain and/or repair entranceway landscaping and/or the common roadway could be submitted to arbitration.”
In response, Isle filed a Motion to Abate and Compel Arbitration, for which the trial court conducted a hearing on December 6, 2011; the court did not rule at that time, but eventually specially set a hearing for March 2012.
On December 8, 2011, Isle served a Request to Produce seeking all of the quarterly shared expense statements or invoices prepared by Lakes with regard to the General Liability Insurance policies. Lakes objected to this request. The trial court sustained Lakes’ ' objection and stayed the request to produce “pending the ruling on the motion to abate and compel arbitration.”
On March 26, 2012, the trial court granted Isle’s motion to abate and compel arbitration, finding that “a valid agreement to arbitrate, an arbitrable issue and no waiver.”
I
In its first issue on appeal, Lakes argues that the trial court erred in determining that an arbitrable issue exists between the parties. Lakes contends that the drafters of the Agreement “specifically drafted *727 paragraphs 9 and 10” to delineate what matters were to be arbitrated. Since paragraph 20 contains only a general arbitration provision, Lakes contends that the ejusdem generis doctrine should be employed to limit paragraph 20’s general arbitration provision to the specific situations identified in paragraphs 9 and 10.

Standard of Review

“An order granting or denying a motion to compel arbitration is reviewed de novo.” Best v. Ed. Affiliates, Inc., 82 So.3d 143, 145 (Fla. 4th DCA 2012) (quoting DFC Homes of Fla. v. Lawrence, 8 So.3d 1281, 1282-83 (Fla. 4th DCA 2009)). However, “the trial court’s factual findings are reviewed under a competent, substantial evidence standard.” Id. at 146 (quoting BDO Seidman, LLP v. Bee, 970 So.2d 869, 873-74 (Fla. 4th DCA 2007)).

The Agreement’s Paragraph 20 is Enforceable

Chapter 682, Florida Statutes (2011), governs arbitration in commercial contract cases. Section 682.02 permits parties to “include in a written contract a provision for the settlement by arbitration of any controversy ... arising between them relating to such contract.” § 682.02, Fla. Stat. (2011). Such arbitration provisions “shall be valid, enforceable, and irrevocable without regard to the justiciable character of the controversy.” Id.
‘Where there is a dispute between the parties to a contract concerning the propriety of arbitration, the proper remedy is for a party to apply to the court for an order compelling or staying arbitration pursuant to section 682.03, Florida Statutes (1999).” Hospitality Ventures of Coral Springs, L.C. v. Am. Arbitration Ass’n, 755 So.2d 159, 160 (Fla. 4th DCA 2000). Once a party has filed a motion to compel arbitration:
[i]f the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.
§ 682.03(1), Fla. Stat. (2011). As such, it is for the court, not the arbitrator, to determine “whether a valid written agreement to arbitrate exists.” Shotts v. OP Winter Haven, Inc., 86 So.3d 456, 471 (Fla.2011) (quoting Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999)).
To this, Florida courts have recognized that “there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.” Seifert, 750 So.2d at 636. In the case at hand, Lakes contests the latter two elements.

Whether an Arbitrable Issue Exists

Florida courts have recognized “arbitration [a]s a favored means of dispute resolution,” and, as so, this Court “should resolve all doubts about the scope of an arbitration agreement as well as any questions about waivers thereof in favor of arbitration, rather than against it.” EMSA Ltd. P’ship v. Mason, 677 So.2d 105, 107 (Fla. 4th DCA 1996) (quoting Roe v. Amica Mut. Ins. Co., 533 So.2d 279, 281 (Fla.1988)). However, arbitration “may be required only as to those disputes concerning which the parties have expressly agreed.” Vargas v. Schweitzer-Ramras, 878 So.2d 415, 417 (Fla. 3d DCA 2004) (quoting Atencio v. U.S. Sec. Ins. Co., 676 So.2d 489, 490 (Fla. 3d DCA 1996)). Thus, “[t]he general rule is that where an arbi *728 tration agreement exists between the parties, arbitration is required only of those controversies or disputes which the parties have agreed to submit to arbitration.” Royal Prof'l Builders, Inc. v. Roggin, 853 So.2d 520, 528 (Fla. 4th DCA 2003).
“[B]ecause arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation.” Seifert, 750 So.2d at 636. Following this principle, “the determination of whether an arbitration clause requires arbitration of a particular dispute necessarily ‘rests on the intent of the parties.’ ” Id. (quoting Seaboard Coast Line R. Co. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir.1982)).
In the case at hand, paragraph 20 of the Agreement is facially enforceable and nearly identical to arbitration clauses previously approved by this Court. See, e.g., Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344, 346 (Fla. 4th DCA 1992) (upholding an arbitration clause which stated that “[a]ll claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration” (emphasis removed)); William Passalacqua Builders, Inc. v. Mayfair House Ass’n, 395 So.2d 1171, 1173 (Fla. 4th DCA 1981) (approving an arbitration clause which stated that “[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof ... shall be decided by arbitration”).
To blunt the application of paragraph 20, Lakes invokes the doctrine of ejusdem generis to argue that the “more specific” arbitration clauses delineated in Paragraphs 9 and 10 of the Agreement should limit arbitration to situations where Isle failed to pay its shared expenses or where Lakes committed a maintenance default. According to this argument, giving effect to the general language of paragraph 20 would encapsulate all disputes related to the Agreement and thus “would mean that the more specific paragraphs 9 and 10 are ineffective and have no relevance.” This argument misconstrues the doctrine of ejusdem generis.
“Ejusdem generis,” which literally means “of the same kind,” Eicoff v. Denson, 896 So.2d 795, 798 (Fla. 5th DCA 2005), provides that “when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type as those listed.” State v. Hearns, 961 So.2d 211, 219 (Fla.2007). Within contract law, this rule directs “that a specific clause takes precedence over a general clause.” Raines v. Palm Beach Leisureville Cmty. Ass’n, 317 So.2d 814, 817 (Fla. 4th DCA 1975) (citing Cypress Gardens Citrus Prods., Inc. v. Bowen Bros., Inc., 223 So.2d 776 (Fla. 2d DCA 1969)). Thus, “where there are general and special provisions in a contract relating to the same thing, the special provisions will govern its construction over matters stated in general terms.” Aetna Life Ins. Co. v. White, 242 So.2d 771, 773 (Fla. 4th DCA 1970) (citations omitted).
Lakes is correct in asserting that the principle of ejusdem generis applies to this case; however, its application does not preclude application of paragraph 20 to situations as the one presented. Rather, the ejusdem generis doctrine is employed within contract law to resolve differences inherent in conflicting contract provisions, thereby clarifying a party’s obligations, not to obliterate general provisions that do not directly conflict with specific provisions.
This principle is exhibited in Raines, where paragraph 6 of a contract provided that condominium unit owners could be liable for a l/32nd share for specific types of maintenance expenses. 317 So.2d at *729 815-16. Paragraph 9, however, generally provided that all unit owners would pay a pro-rata 32/1188th share for maintenance expenses. Id. at 816-17. Recognizing that unit owners could not pay both a l/32nd and 32/1138th share of certain expenses, this Court, employing the ejusdem generis doctrine, found that paragraph 6, because it applied to the specific maintenance expenses involved in the case, took precedence over paragraph 9’s general expense provision. Id. at 817. However, this Court also recognized that, despite this limitation, paragraph 9 was “applicable ... to those portions of Paragraph 6 that are not exempted by specificity from that general directive.” Id. at 818 (emphasis added); see also Tiny Treasures Acad. & Get Well Ctr., Inc. v. Stirling Place, Inc., 916 So.2d 991, 994 (Fla. 4th DCA 2005) (applying the principle of ejusdem generis such that a specific damages provision would be read to modify, not eviscerate, a general damages provision).
Similarly, in Kel Homes, LLC v. Burris, 933 So.2d 699, 701 (Fla. 2d DCA 2006), paragraph 24 of a contract provided that certain fraud-related claims “shall be submitted to binding arbitration,” while paragraph 28 provided that, in the event of default, the buyer’s exclusive remedy was a suit for specific performance. Since the dispositive issue in the case involved the seller’s default, the second district held that the specific provision of paragraph 28 controlled; however, the court also rejected the argument that “an interpretation that allows for a suit for specific performance in case of its default renders ... paragraph 24 meaningless” since the parties entered into a valid agreement. Id. at 704. The court therefore gave effect to both provisions and held that paragraph 24 required the parties to arbitrate “any and all disputes other than those seeking specific performance.” Id. (emphasis added).
In sum, the principle of ejusdem generis applies to enforce specifically defined contract provisions that conflict with general provisions that would otherwise control the situation. However, per Raines and Kel Homes, Florida courts must give effect to valid, applicable general provisions that do not conflict with specific arbitration provisions.
In the case at hand, paragraph 10 provides arbitration procedures for the specific situation where Lakes “fails in its performance ... regarding its maintenance obligations.” In such situations, Isle may declare a default and Lakes is given thirty days to cure. The Agreement established this procedure to allow the parties to resolve maintenance obligation default issues before resorting to litigation.
On the other hand, paragraph 20 generally provides that the parties may compel binding arbitration for any dispute arising from the Agreement or the obligations of the parties to the Agreement. Therefore, if the nature of a dispute involves a maintenance default, the ejusdem generis doctrine would apply to require that Isle follow the arbitration procedures defined in paragraph 10. However, the dispute at hand involves Lakes’ “Shared Expense” obligations, not a maintenance default, and thus this issue squarely falls within the umbrella of Paragraph 20, and outside of specific procedures of paragraph 10.
As the Second District stated in Kel Homes, “parties may enter into any contract they desire, and they are bound by the language of that contract.” 933 So.2d at 704 (citing Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1004 (Fla. 2d DCA 1995); Sec. First Fed. Sav. & Loan Ass’n v. Jarchin, 479 So.2d 767, 770 (Fla. 5th DCA 1985)). “This is true no matter how disadvantageous that language later proves to be for one party or the other.” Id. (citing Jarchin, 479 *730 So.2d at 770). Paragraphs 10 and 20 of the Agreement do not conflict in the situation at hand. Applying Florida law, we give effect to both arbitration provisions and find that the issue was arbitrable.
II
In its second issue on appeal, Lakes argues that Isle waived its right to arbitration by filing a request to produce regarding the merits of the case after filing a motion to compel arbitration. This argument is without merit.

Standard of Review

“[WJhether a party has waived the right to arbitrate is a question of fact, reviewed on appeal for competent, substantial evidence to support the lower court’s findings.” Green Tree Servicing, LLC v. McLeod, 15 So.3d 682, 686 (Fla. 2d DCA 2009) (quoting Mora v. Abraham Chevrolet-Tampa, Inc., 913 So.2d 32, 33 (Fla. 2d DCA 2005)). However, “[aJU doubts regarding waiver should be construed in favor of arbitration rather than against it.” Marine Env’t Partners, Inc. v. Johnson, 863 So.2d 423, 426 (Fla. 4th DCA 2003) (citing Miller & Solomon Gen. Contractors, Inc. v. Brennan’s Glass Co., 824 So.2d 288 (Fla. 4th DCA 2002)).

Whether the Question of Waiver Should Have Been Reserved for the Arbitrators

Before addressing the pertinent issue of waiver, it is first necessary to discuss whether the trial court or the arbitrators should decide the issue of waiver. Under Seifert, one of the three elements for courts to consider in ruling on a motion to compel arbitration is “whether the right to arbitration was waived.” 750 So.2d at 636. This Court has adopted the holding from Seifert in numerous instances. See, e.g., Roger E. Freilich, D.M.D., P.A. v. Shochet, 96 So.3d 1135, 1138 (Fla. 4th DCA 2012) (“Arbitration can be waived, however, and it is one of the preliminary issues for courts to consider when determining whether to grant a motion to compel arbitration.”).
Nevertheless, Isle argues that the question of waiver should have been decided by the arbitrators since Isle had voiced this desire at the hearing below. Isle bases this argument on Federated Dept. Stores, Inc. v. Pavarini Constr. Co., Inc., 425 So.2d 1212, 1213 (Fla. 4th DCA 1983), where this Court held that “the question whether arbitration has been waived may be decided by a court unless one of the parties contends the waiver question should be answered by the arbitrators in which case it should be answered by the arbitrators.” (Emphasis added). Decided in 1983, Pavarini was impliedly overruled by Seifert, a case that we have followed since 1999.[1]

Isle’s Actions Did Not Constitute Waiver

The general definition of “waiver” as “the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right” is also applicable to the right of arbitration. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005) (citing Major League Baseball v. Morsani, *731 790 So.2d 1071, 1077 n. 12 (Fla.2001)). In this regard, the party claiming waiver need not prove prejudice. Id.; Johnson, 863 So.2d at 428 (“[W]e would adhere to the "view that no prejudice is required.”). Rather, in determining whether a party waived its right to arbitrate, “[t]he essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right.” Shochet, 96 So.3d at 1138 (quoting Saldukas, 896 So.2d at 711) (emphasis added).
“A party claiming waiver of arbitration must demonstrate: 1) knowledge of an existing right to arbitrate and 2) active participation in litigation or other acts inconsistent with the right.” Inverrary Gardens Condo. I Ass’n, v. Spender, 939 So.2d 1159, 1161 (Fla. 4th DCA 2006) (quoting Breckenridge v. Farber, 640 So.2d 208, 211 (Fla. 4th DCA 1994)). In this regard, this Court, as well as the other district courts, has held that “propounding discovery directed to the merits of pending litigation before moving to compel arbitration results in a waiver of the right to arbitration.” McLeod, 15 So.3d at 688; Gordon v. Shield, 41 So.3d 931, 933 (Fla. 4th DCA 2010) (“[T]he active participation in litigation or the propounding of discovery would be circumstances where the right to arbitrate would be deemed waived.” (emphasis added)); see also Olson Elec. Co. v. Winter Park Redevelopment Agency, 987 So.2d 178, 179 (Fla. 5th DCA 2008); Estate of Orlanis ex rel. Marks v. Oakwood Terrace Skilled Nursing & Rehab. Ctr., 971 So.2d 811, 812-13 (Fla. 3d DCA 2007).
Filing a motion to compel arbitration before requesting discovery is not necessarily dispositive; rather, “[a] party who timely asserts the right to arbitration may still waive th[at] right by later conduct that is inconsistent with the arbitration request.” Glenn B. Wright Constr. & Dev., Inc. v. Cohara, 87 So.3d 1276, 1278 (Fla. 4th DCA 2012) (quoting McLeod, 15 So.3d at 687); see also Price v. Fax Recovery Sys., Inc., 49 So.3d 835, 837 (Fla. 4th DCA 2010) (“[E]ven when a motion to compel arbitration and a counterclaim are filed at the same time, without some other indicia of waiver such as participating in discovery, a waiver is not proper.” (emphasis added)). Thus, for example, in Cohara, even though the party seeking arbitration’s “first response to the initial complaint was a motion to compel arbitration,” this Court found that that party waived its right to arbitration when it “took no action on that motion for more than three and a half years, and instead propounded discovery and took other actions to attack the merits of the case.” 87 So.3d at 1278.
A traditional illustration of waiver of arbitration through the propounding of discovery occurred in Lion Gables Realty Ltd. v. Randall Mechanical, Inc., 65 So.3d 1098 (Fla. 5th DCA 2011). There, a developer filed third party claims against three subcontractors. The trial court compelled arbitration and the developer appealed. Id. at 1099. The Fifth District reversed, explaining that one of the subcontractors had waived the right to arbitration by participating in merits discovery — including requesting copies of all material furnished in response to a production request directed to a non-party engineering group’s expert file. Id. at 1101.
Like Lion Gables, cases finding waiver of arbitration have entailed a party’s participation in discovery that is more extensive than what occurred in this case. See, e.g., id. (“[Although Trustmark attempts to minimize its discovery partie-ipation-as only amounting to two requests for copies — a closer examination of the record reveals that these two requests were directed at a number of comprehensive production requests.”); McLeod, 15 *732 So.3d at 694 (finding waiver of arbitration where appellant conducted “substantial” discovery activity which remained pending for several 'months, including requests to produce twenty-eight categories of merit-related documents and three sets of interrogatories propounding forty-five questions); Estate of Orlanis ex rel. Marks, 971 So.2d at 812 (finding waiver where appellant engaged in “interrogatories, requests for production of documents, and notices to produce to non-parties” before filing a motion to arbitrate); Marthame Sanders & Co. v. 400 West Madison Corp., 401 So.2d 1145, 1145 (Fla. 4th DCA 1981) (finding waiver where defendant, amongst other inconsistent actions, “proceeded with discovery, including depositions, interrogatories, and document production”); Sch. Bd. of Orange Cnty. v. S.E. Roofing & Sheet Metal, Inc., 489 So.2d 886, 887 (Fla. 5th DCA 1986) (reversing an order compelling arbitration where appellee “actively participated in discovery throughout ... fourteen months by taking depositions, ... filing a request for production of documents, ... and submitting additional interrogatories”). Furthermore, in Lion Gables, “as in most other cases [finding waiver,] discovery or other litigation was undertaken for weeks or months before the filing of the motion to compel arbitration.” Shochet, 96 So.3d at 1139 (recognizing that waiver is less favored where a request for discovery is made while arbitration between the parties is pending).
In this ease, the trial court did not abuse its discretion in finding that Isle did not waive its arbitration right. The request for production was nipped in the bud by the circuit court’s stay, so Isle’s “waiver” conduct was hardly extensive. Furthermore, Isle’s first response after recognizing the dispute was to file for arbitration and later to move to compel arbitration. Thus, arbitration was “pending” when the limited discovery request was made.

Affirmed.

CIKLIN and CONNER, JJ., concur.

. In deciding Pavarini, we relied upon the Third District’s decision in Public Health, Trust of Dade Cnty. v. M.R. Harrison Constr., 415 So.2d 756 (Fla. 3d DCA 1982). 425 So.2d at 1213. The Third District has since explicitly found that "the Fourth District's interpretation of [that case] is in error.” ARI Mut. Ins. Co. v. Hogen, 734 So.2d 574, 575 (Fla. 3d DCA 1999). Rather, the Third District observed that Public Health stands for the proposition that "the issue of whether a demand for arbitration was untimely,” as against waiver, "should be decided by the arbitrators.” Id.