[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15221

_____

D.C. Docket No. 1:17-cv-22475-RNS

JULIAN DEPOT MIAMI, LLC,

Plaintiff-Appellant,

versus

HOME DEPOT U.S.A., INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 3, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, Circuit Judge, and
MOORE,* District Judge.

WILLIAM PRYOR, Chief Judge:

---

* Honorable K. Michael Moore, Chief United States District Judge for the Southern District
of Florida, sitting by designation.

This appeal requires us to interpret a lease executed by Home Depot, U.S.A., Inc., and the predecessor-in-interest of Julian Depot Miami, LLC. Home Depot leased an undeveloped part of a retail center for a term of 20 years with four options to renew. Although the parties allegedly entered the lease with the expectation that Home Depot would build a retail store on the property and make other associated improvements, the lease stated that Home Depot was not obligated to build anything, including a retail store. But the lease imposed "economic consequences" on Home Depot for not building a retail store, including increased rent and the right of the landlord to terminate the lease. Home Depot built and operated a retail store for several years before a fire destroyed it. Home Depot razed the remains, decided not to rebuild, and paid increased rent accordingly. Julian Depot construed the lease to require rebuilding and filed suit for a declaratory judgment. Home Depot responded that when razing occurs due to fire, it has the *option* to rebuild and the consequences for not rebuilding are increased rent and the right of Julian Depot to terminate. The district court granted summary judgment in favor of Home Depot. We affirm.

## I. BACKGROUND

Home Depot and Tallahassee Biscayne LLC executed a lease in 2006. Home Depot leased the land from Tallahassee Biscayne for an initial 20-year term, with the option to renew four times for five-year terms. The land was undeveloped

2

when the parties entered the lease, but the lease provided Home Depot the option to construct and operate a retail building. If Home Depot did not exercise that option within a specified time, the lease imposed the "economic consequences" of increased rent and the right of the landlord to terminate the lease.

Home Depot completed construction of and opened a retail building in early 2008. Julian Depot acquired the property and the lease from Tallahassee Biscayne in 2012. And in 2013, a fire caused significant damage to the store. The Miami-Dade County Regulatory and Economic Resources Department concluded that the damaged building created a safety risk and issued a notice that ordered the building be repaired or demolished. After securing the necessary permits, Home Depot razed the heavily damaged building and decided not to rebuild.

Julian Depot interpreted the lease to require reconstruction of any improvements made to the land but razed during the lease term. It also interpreted the lease to extend at the end of the 20-year term automatically until Home Depot completes reconstruction, with the ordinary increased rent penalties incurring. Home Depot disagreed and interpreted the lease to provide it the option to rebuild or to pay the ordinary increased rent penalties through the end of the 20-year term.

Julian Depot filed suit in 2017 in a Florida court. It sought damages for breach of contract and a declaratory judgment that Home Depot had to either rebuild or continue paying increased rent through the end of the four five-year

3

renewal options and for each year beyond that in perpetuity. But Julian Depot later cabined its theory to requiring Home Depot to rebuild or continue paying increased rent through the end of the four renewal options.

Home Depot removed the action, 28 U.S.C. §§ 1441(a)–(b), 1332, and then moved to dismiss the complaint. The district court granted the motion in part. Because the breach-of-contract claim was not yet ripe, it dismissed that claim. But it allowed the request for a declaratory judgment to proceed.

The parties filed cross-motions for summary judgment. Although Julian Depot argued the terms of the lease were unambiguous, it offered parol evidence if the district court disagreed. The district court granted summary judgment in favor of Home Depot. It concluded that the contract required Home Depot neither to rebuild the retail store nor to continue paying increased rent, either indefinitely or through the four renewal periods. The district court concluded that Home Depot had the option to rebuild or to pay increased rent through the end of the initial 20-year term. Because the terms of the lease were unambiguous, it refused to consider Julian Depot's parol evidence.

## II. STANDARD OF REVIEW

"Contract interpretation is a question of law and is subject to *de novo* review." *Am. Cas. Co. of Reading, Pa. v. Etowah Bank*, 288 F.3d 1282, 1285 (11th Cir. 2002). We likewise review *de novo* a summary judgment. *Sears v. Roberts*,

922 F.3d 1199, 1205 (11th Cir. 2019). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

"In a contract action, a federal court sitting in diversity jurisdiction [ordinarily] applies the substantive law of the forum state." *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998); *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988). The parties agree that Florida law governs. "In interpreting a contract under Florida law, we give effect to the plain language of contracts when that language is clear and unambiguous." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (internal quotation marks omitted); *see also Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012). Florida courts will conclude "that a phrase in a contract is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one." *Solymar*, 672 F.3d at 991 (internal quotation marks omitted). But Florida courts are careful "not to create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions." *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293 (11th Cir. 2019) (internal quotation marks omitted).

Julian Depot asks that we consider parol evidence to aid our interpretation of the contract, even though it contends that the lease is unambiguous. We can consider parol evidence only if an ambiguity exists in the contract. *See id.* (explaining that Florida courts do "not resort to outside evidence" unless an ambiguity exists (internal quotation marks omitted)); *Solymar*, 672 F.3d at 991. And Florida courts apply interpretive canons before concluding an ambiguity exists. *See Beach Towing Servs. v. Sunset Land Assocs.*, 278 So. 3d 857, 861–62 (Fla. Dist. Ct. App. 2019) (using the series-qualifier canon to conclude a contract was unambiguous and citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 19, at 147–51 (2012)); *see also GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1140 (11th Cir. 2019) ("That a provision is complex and requires analysis for application does not automatically mean it is ambiguous." (internal quotation marks omitted)); *Dear*, 933 F.3d at 1298 (explaining that "ambiguity is not invariably present when a contract requires interpretation" (internal quotation marks omitted)). Because no ambiguity exists, we do not consider any parol evidence.

Although both parties agree that the lease never obligated Home Depot to construct a retail building in the first place, they disagree on what penalties apply if Home Depot constructs a building and then razes it. Home Depot contends that when razing is caused by a casualty, Article 10, "Damage or Destruction,"

6

controls. Julian Depot contends that a combination of Article 10 and Article 8.9, the latter of which is in an article entitled "Maintenance and Repairs; Improvements," controls. Because both parties agree that Article 10 controls at least in part, we begin with it.

Article 10 governs damage to or destruction of improvements by a casualty. It contains two subsections, one governing damage or destruction occurring before the last 18 months of the lease, and the other governing certain damage or destruction occurring during the last 18 months of the lease. As to any casualty that occurs before the last 18 months, Article 10.1 governs Home Depot's rights regarding rebuilding with the insurance proceeds and states that the ordinary rent provisions continue unabated:

> 10.1 <u>Damage and Destruction to Premises</u>. If the Retail Building or any of Tenant's other improvements on the Premises are damaged or destroyed during the Term by a casualty loss, Tenant ***shall***, at ***its election*** and at its expense, rebuild and restore the Retail Building and other Improvements pursuant to <u>Section 8.2.</u> above. Tenant ***shall*** have full use of and the right to apply any insurance proceeds available for such rebuilding and restoration. No such casualty or damage to or destruction or demolition of any of the Improvements ***shall*** affect Tenant's obligation to pay Rent, including Additional Rent or any other sums required to [be] paid by Tenant hereunder. Tenant ***shall***, within twenty-four (24) months from the date of such damage or destruction or within such shorter period of time as ***shall*** be reasonable, use all insurance proceeds to restore or cause restoration of all Improvements then existing on the Premises to as good a condition as existed prior to such damage or destruction and to an architectural design and appearance, harmonious with that which was destroyed or damaged, subject, however, to the terms of <u>Section 8.2.</u> above. This Lease ***shall*** continue in full force and effect with no abatement whatsoever of Rent,

7

including, without limitation, Additional Rents or any other sums required to [be] paid by Tenant hereunder.

Article 10.1 applies because a fire caused the damage to the retail building. *See Casualty*, *Black's Law Dictionary* (8th ed. 2004) ("A serious or fatal accident. A person or thing injured, lost, or destroyed."). Julian Depot argues that the use of "shall" throughout this Article means Home Depot "must" rebuild any retail building damaged or destroyed by fire. Home Depot concedes that ordinarily "shall" means "must," but it argues that in this instance "shall" means "may" due to the inclusion of the phrase, "at its election."

We agree with Home Depot that "shall" in the first sentence is better read as "may." "[T]he term 'shall' can be construed as 'must' or 'may.'" *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 978 (Fla. 2017) (explaining that the Tenth Edition of *Black's Law Dictionary* "defin[es] 'shall' in relevant part as 'will' or 'may'"). Context matters, *id.*, and Florida law requires us to "give meaning to each and every word [a lease] contains" if possible, *Equity*, 1243 F.3d at 1242. The context of this lease establishes that this use of "shall" means "may." We cannot give "shall" a mandatory meaning here when it is joined with the clearly permissive phrase "at its election." *See Election*, *Black's Law Dictionary* (8th ed. 2004) ("The exercise of a choice; esp., the act of choosing from several possible rights or remedies in a way that precludes the use of other rights or remedies."); *Election*, *Black's Law Dictionary* (11th ed. 2019) (same). To conclude otherwise

8

would require us to read "at its election" out of the contract, which we cannot do. *See* Scalia & Garner, *Reading Law* § 26, at 174 ("If possible, every word and every provision is to be given effect . . . . None should be ignored . . . [or] given an interpretation that causes it . . . to have no consequence.").

It is unsurprising that "shall" means "may" in this first sentence considering that, with one exception, the parties incorrectly used "shall" throughout the paragraph. *See id.* § 11, at 112 (lamenting that "drafters have been notoriously sloppy with their *shalls*"). "As you read the [paragraph], remember that *shall* ought to be replaceable by either *has a duty to* or *is required to*." *Id.* If neither phrase can replace "shall" seamlessly, then the usage of "shall" is incorrect. The second sentence of the paragraph explains that Home Depot "shall have full use of and the right to apply any insurance proceeds." This sentence plainly conveys that Home Depot has the right to the insurance proceeds, but it would be awkward to say that it "[has a duty to or is required to] have full use of and the right to apply any insurance proceeds." Similarly, the third sentence states, "No such casualty . . . shall affect [Home Depot's] obligation to pay Rent." It would make little sense to say, "No such casualty . . . [has a duty to or is required to] affect Home Depot's obligation to pay rent." Replacing the second "shall" in the fourth sentence or the "shall" in the last sentence with "has a duty to" or "is required to" would create similar issues. The same is true of the "shall" in the first sentence, for Home Depot

9

cannot simultaneously "ha[ve] a duty to" or be "required to" rebuild, while also being able to rebuild "at its election." Instead, all these "shalls" are incorrect usages that should really be replaced with "may" or "will" depending on the context. *Id.* at 112–13 (providing examples of incorrect uses of "shall" where the drafter really meant "will").

Julian Depot weakly points to the only correct usage of "shall" in this paragraph to argue against reading "shall" as "may" in the first sentence. The fourth sentence provides that Home Depot "shall, within twenty-four (24) months . . . , use all insurance proceeds to restore" the retail building. This use of "shall" is correct because it provides that Home Depot "has the duty to . . . use all insurance proceeds to restore" the retail building. But to the extent this sentence creates any tension with the necessarily permissive use of "shall" in the first sentence, we are obligated to resolve it so that we do not read "at its election" out of the contract.

The requirement to use insurance proceeds appears after the lease states that Home Depot possesses the right to the "full use of . . . any insurance proceeds" to rebuild, so the requirement that Home Depot "shall" use insurance proceeds to restore the building is better read to require Home Depot, if it "elect[s]" to rebuild, to use any insurance proceeds it obtains for the reconstruction. Keep in mind that Julian Depot is a "loss payee[]" for any insurance benefits. The lease makes clear that Home Depot has priority to use the payout if it elects to rebuild. If Home

Depot chooses not to rebuild, then, as it concedes, the insurance proceeds must be remitted to Julian Depot at the expiration of the lease, per the lease's requirement that title to all improvements pass to the landlord. In sum, under Article 10.1, Home Depot had the option or "election," not the obligation, to rebuild. Because it did not rebuild, it is subject to the ordinary "economic consequences" of increased rent and Julian Depot's right of termination.

The simultaneously executed "Restriction Agreement and Grant of Easements" confirms our interpretation. *See Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1340 (11th Cir. 2019) ("Under Florida law, documents executed by the same parties, on or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract." (alteration adopted) (internal quotation marks omitted)). In that Agreement, the parties also described Home Depot's obligations following a fire:

> 13.1 <u>Damage to Buildings</u>. If any of the Buildings located on any Parcel are damaged or destroyed by fire or other cause, the Owner and Prime Lessee of such Parcel shall promptly cause either (i) the repair, restoration, or rebuilding of the Building so damaged or destroyed to a condition and an architectural style existing immediately prior to the damage or destruction, (ii) the rebuilding of a completely new Building (subject to the approval process set forth in this Agreement), or (iii) the razing of any damaged Building, the filling of any excavation, and performance of any other work necessary to put such portion of the Shopping Center in a clean, sightly and safe condition.

The Agreement allows Home Depot to "either" repair the damaged building up to the original standards, rebuild a completely new building, subject to approval, *or*

11

"raz[e]" the damaged building. That third option does not also require rebuilding. The Agreement confirms that Article 10.1 does not impose a rebuilding requirement, such that "shall" means "may" in the first sentence of Article 10.1 of the lease.

Any lingering doubt about the effect of Article 10.1 is removed by Article 7.3 of the lease, which states that nothing in the lease should be construed to require Home Depot to construct *anything*, including a retail building. Indeed, Article 7.3 provides, "Notwithstanding any provision contained herein or in any other documents to the contrary, Tenant shall have no obligation to construct any improvements upon the Premises or open or operate in the Premises." Ordinarily the use of a "notwithstanding" clause establishes that the next clause is to prevail over any contradictory clauses. *See Waverly 1 & 2, LLC v. Waverly at Las Olas Condo. Ass'n*, 242 So. 3d 425, 428 (Fla. Dist. Ct. App. 2018) (holding that a "notwithstanding" clause "supersede[d]" any contrary language in the contract); *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."); Scalia & Garner, *Reading Law* § 13, at 127 ("[T]he catch-all *notwithstanding* is a fail-safe way of ensuring that the clause it introduces will absolutely, positively prevail."). Although Julian Depot asks that we limit the

12

"notwithstanding" provision only to the initial decision to build, the provision itself provides no such limitation. *Cf. Land O'Sun Realty Ltd. v. REWJB Gas Invs.*, 685 So. 2d 870, 871–72 (Fla. Dist. Ct. App. 1996) (refusing to conclude that a provision containing a "notwithstanding" clause overrode a conflicting provision because to do so "would unacceptably render the [other provision] completely superfluous").

Julian Depot's only textual response is that Article 8.9 applies in addition to Article 10.1, and Article 8.9 requires rebuilding. Article 8 governs "Maintenance and Repairs; Improvements," with Article 8.9 specifically governing "Alterations; Demolition and Construction of Improvements." Article 8.9 grants Home Depot the right to construct any improvements it desires without consent of the landlord, while simultaneously governing what happens if Home Depot razes an improvement and then constructs a new one. As relevant, it allows Home Depot "to raze or demolish any existing Improvements and to construct new Improvements," provided it complies with certain requirements, such as "construct[ing] new Improvements" that are similar in value to the demolished improvements and "substantially complet[ing] the new or replacement Improvements" at least 180 days before the expiration of the lease. Failure to "substantially complete[]" the improvement before the last 180 days causes the lease to extend through "the next succeeding Option Term." Julian Depot relies on

13

this provision to argue that Home Depot must rebuild any improvement it razes before the last 180 days of the lease term or extend the lease through the remaining option terms until it does.

As an initial matter, Julian Depot unpersuasively argues that Article 8.9 imposes a rebuilding requirement following any demolition of an improvement. But reading a rebuilding requirement into Article 8.9 would unnecessarily conflict with the ordinarily ironclad "notwithstanding" clause. *See* Scalia & Garner, *Reading Law* § 13, at 126–28. Instead, Article 8.9 is likely better read to govern what Home Depot must do if it chooses to raze *and* rebuild.

In any event, even if Article 8.9 requires rebuilding after razing, the context of Article 8, construed as a whole, makes clear that it governs run-of-the-mill maintenance, demolition, and construction, and not demolition due to casualty. *See id.* § 24, at 167 ("The text must be construed as a whole."). In contrast to Article 10, entitled "Damage or Destruction," the general title for Article 8— "Maintenance and Repairs; Improvements"—and the specific title for Article 8.9— "Alterations; Demolition and Construction of Improvements"—means that Article 8 provides the general requirements for Home Depot's ordinary use of the premises. *See id.* § 35, at 221 ("The title and headings are permissible indicators of meaning."). And the substance of Article 8 bears out that conclusion. For instance, Article 8.1 requires Home Depot to keep the premises in good repair, and Article

14

8.4(a) defines certain types of improvements that Home Depot "shall have the right, but not the obligation, . . . to construct," like the retail building. The whole text makes plain that this provision applies when Home Depot chooses to raze an existing improvement in the usual course of business, not when it is forced to do so because of a casualty.

Florida law provides that "where there are general and special provisions in a contract relating to the same thing, the special provisions will govern its construction over matters stated in general terms." *Ibis Lakes Homeowners Ass'n v. Ibis Isle Homeowners Ass'n*, 102 So. 3d 722, 728 (Fla. Dist. Ct. App. 2012) (internal quotation marks omitted); *accord Bystra v. Fed. Land Bank of Columbia*, 90 So. 478, 480 (Fla. 1921). The lease contains an entire article governing what happens when the premises are damaged or destroyed "by a casualty loss." But a separate article governs general maintenance and construction. Article 10 must apply, and nothing in Article 10 references Article 8.9. Article 10.1 instead twice references "Section 8.2." But that section in its entirety reads, "Intentionally Deleted," and so does nothing to further Julian Depot's interpretation. Article 10 references only the continued effect of the rent provisions, which provide for increased rent and the landlord's right to terminate in the event no retail building is operational.

15

And were we to accept Julian Depot's interpretation of Article 8.9 to require Home Depot to rebuild after any demolition and its argument that both Articles 8.9 and 10 govern razing following a casualty, the lease would contain internal contradictions. *See* Scalia & Garner, *Reading Law* § 26, at 174 (explaining that no word should be interpreted "to have no consequence"); *id.* § 27, at 180 ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory. . . . Hence there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously."). For example, the alleged rebuilding requirement of Article 8.9 would conflict with or render ineffective the "at its election" language of Article 10.1, and we are not to read out terms if reasonably possible. *See Equity*, 556 F.3d at 1242. It would also conflict with Article 10.2, which allows Home Depot to terminate the lease immediately, provided it "raze[s] all unstable" parts of the improvement, if a certain amount of damage occurs in the last 18 months. If we read Article 8.9 both to include a rebuilding requirement and to govern razing following a casualty, then Home Depot would simultaneously be allowed to terminate the lease immediately *and* be required to extend the lease until it rebuilds.

The most reasonable construction of the lease is that, at the very least, Article 8.9 governs routine razing, while Article 10 governs razing following a

casualty. And Article 10 provides Home Depot the option to rebuild or to face the standard "economic consequences." It chose the latter.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Home Depot.