933 So.2d 699 (2006)
KEL HOMES, LLC, Appellant,
v.
Michael and Tonia BURRIS, individually, Appellees.
No. 2D06-595.
District Court of Appeal of Florida, Second District.
July 21, 2006.
*700 Jeffrey Sanford Kaufman of Kaufman, Englett & Lynd, P.A., Orlando, for Appellant.
Kelly A. Greene of Kelly A. Greene, P.A., Kissimmee, for Appellee.
STRINGER, Judge.
Kel Homes, LLC, appeals from the trial court's order that denied its motion to dismiss the Burrises' complaint based on the arbitration provision in Kel Homes' contract with them. We affirm the trial court's determination that the count for specific performance is not within the scope of the arbitration provision of the contract. However, we reverse the trial court's determination that the count for fraud in the inducement is not within the scope of the arbitration provision, and we remand for further proceedings concerning the validity of the arbitration provision.
*701 In June 2004, the Burrises entered into a contract for the construction of a residence in Polk County with Kel Homes. After Hurricanes Charley, Frances, and Jeanne hit Polk County, Kel Homes attempted to terminate the contract pursuant to the "acts of God" provision of the contract. Upon receiving the termination letter, the Burrises filed suit, seeking specific performance in one count and damages for fraud in the inducement in a separate count.[1] Kel Homes moved to dismiss both counts, relying upon the arbitration provision in the parties' contract. The trial court denied this motion as to both counts on this basis, essentially finding that neither count came within the scope of the arbitration provision. However, the trial court did agree that the fraud in the inducement count failed to state a cause of action due to lack of facts and gave the Burrises leave to amend. This is the order that Kel Homes appeals.
At issue in this case is the proper interpretation of two separate provisions of the contract between Kel Homes and the Burrises, which appear on their face to conflict as to what claims come within the scope of the arbitration provision. These provisions state, in pertinent part:
24. Arbitration Agreement. It is hereby agreed that any and all claims, disputes and controversies by or between the Buyer and Seller arising from or related to the subject home identified herein, or to any defect in or to the subject home or the real property on which the subject home is situated, or the sale of the subject home by the Seller, including, without limitation, any claim for breach of contract, neglect or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty to good faith and fair dealing, shall be submitted to binding arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter "CAS") in effect at the time of the request for arbitration.
. . . .
28. Default. If the Buyer fails to perform according to the terms of this agreement, including the failure or refusal to close or execute and deliver such documents to procure a mortgage, upon which this agreement is conditioned, then this agreement shall be deemed breached by the Buyer and the Seller shall be relieved of all obligations hereunder and shall be entitled to retain all deposits (initial and/or additional) paid and/or payable by the Buyer, as liquidated damages, consideration for the execution of this agreement and in full settlement of any and all claims; whereupon, all parties shall be relieved of all obligations here under. In the event of Seller's default, the buyer's sole and exclusive remedy shall be limited to either a suit for specific performance (but not monetary damages) or the return of the deposit. The Seller's inability to perform under the terms of the contract as a result of conditions or events beyond the Seller's reasonable control and beyond reasonable cost limits, shall preclude the Buyer's remedy of specific performance. A condition precedent to the Buyer filing suit for specific performance shall be: (i) Buyer shall have been in full and complete compliance *702 with all of the terms of this agreement and shall have tendered all payments due hereunder; (ii) Buyer shall have provided the Seller with written notice of Seller's default and shall have allowed Seller a reasonable period of time to cure such default; and, (iii) Buyer shall have notified Seller, in writing, that Seller has failed to cure the default within [a] reasonable period of time not to exceed 30 days.
(Emphasis added.) The issue is how to read these provisions so as to give effect to both.

Count for Specific Performance
As to the count for specific performance, Kel Homes argues such action falls within the scope of the arbitration provision because the term "suit" as used in paragraph 28 should be read to mean "arbitration." This argument is based on the general proposition that courts favor arbitration and will interpret ambiguities liberally in favor of arbitration. The Burrises, on the other hand, contend that a "suit" is not an "arbitration" and that the contract plainly says that they can file a "suit" for specific performance. Thus, according to the Burrises, their claim for specific performance does not fall within the scope of the arbitration provision. The Burrises are correct on this point for several reasons.
First, the parties do not dispute the general proposition that "words in a contract are presumed to have been used with their ordinary and customary meaning." Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1003 (Fla. 2d DCA 1995) (quoting Pottsburg Utils., Inc. v. Daugharty, 309 So.2d 199, 201 (Fla. 1st DCA 1975)). As the Burrises properly point out, the word "suit" is ordinarily understood to mean a proceeding in a court of law. Black's Law Dictionary defines "suit" as "[a] generic term, of comprehensive signification, referring to any proceeding by one person or persons against another or others in a court of law." Black's Law Dictionary 1434 (6th ed. 1990). By contrast, "arbitration" is defined as "[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard." Black's Law Dictionary 104 (6th ed. 1990). Thus, it is clear that the terms "suit" and "arbitration" are not generally understood to have the same meaning, and the term "suit" would not normally be interpreted to encompass an arbitration proceeding.
Kel Homes relies on this court's decision in Fewox v. McMerit Construction Co., 556 So.2d 419 (Fla. 2d DCA 1989), for the proposition that the term "suit" includes arbitration proceedings. However, the underlying rationale of Fewox does not support the application of its holding to this case.
In Fewox, a dispute arose between property owners, their contractor, and the contractor's surety on a performance bond. The contract between the property owners and the contractor required them to resolve their dispute through arbitration. The parties did so, and the contractor's surety paid the arbitration award. The property owners then sought an award of their attorney's fees against the surety pursuant to section 627.428, Florida Statutes (1987), which allows for an award of attorney's fees upon rendition of a judgment against any insurer, and section 627.756, which applied section 627.428 to "suits" brought by property owners against a surety.
In holding that the term "suit" in section 627.756 should be construed to include arbitration proceedings, the court noted that the parties had chosen to resolve their *703 dispute through arbitration rather than through an action in a court of law. In holding that it would be inequitable to deny the property owner's their attorney's fees under this set of facts, this court stated:
The legislative policy underlying section 627.428 is served by requiring insurers to pay attorney's fees to a prevailing insured or beneficiary, regardless of whether the insurers contest coverage through arbitration or in the trial courts. To hold otherwise would be to allow insurers to avoid paying attorney's fees in contested coverage cases merely by choosing arbitration.
Id. at 423-24. Thus, this court did not hold that the term "suit" included arbitration proceedings in all cases, or even that that was a commonly understood meaning of the term "suit." Rather, this court held that public policy required the term "suit" as used in this statutory section to be extended to include arbitration proceedings to further legislative intent.
Given the context of the Fewox case, its holding cannot be extended, as Kel Homes suggests, to mean that the term "suit" in its contract with the Burrises includes arbitration. The court in Fewox did not construe the term "suit" to encompass arbitration because the words had the same meaning. Instead, it did so to further both legislative intent and public policy in the context of disputes between insurers and their insureds. Such public policy considerations do not exist in this case. Accordingly, the holding in Fewox cannot support an interpretation here that would equate the terms "suit" and "arbitration."
Second, the use of different terms in paragraphs 24 and 28 tends to indicate that a different meaning was intended. As a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended. See, e.g., Leisure Resorts, Inc. v. City of W. Palm Beach, 864 So.2d 1163, 1166 (Fla. 4th DCA 2003) ("[S]ophisticated lawyers must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so."); Campbell v. Campbell, 489 So.2d 774, 777 (Fla. 3d DCA 1986); cf. State v. Bradford, 787 So.2d 811, 819 (Fla.2001) ("the legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended").
Here, the use of the term "arbitration" in paragraph 24 and the use of the different term "suit" in paragraph 28 is strong evidence that two different meanings were intended. Had Kel Homes and the Burrises intended paragraph 28 to mean "arbitration for specific performance," the paragraph should have referenced "petitioning for arbitration" rather than "filing suit." The fact that a different term was used in each paragraph militates against Kel Homes' argument that both paragraphs should be interpreted to mean the same thing.
Third, it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject. Island Manor Apartments of Marco Island, Inc. v. Div. of Fla. Land Sales, Condos. & Mobile Homes, 515 So.2d 1327, 1330 (Fla. 2d DCA 1987); Suncoast Bldg. of St. Petersburg v. Russell, 105 So.2d 809, 810 (Fla. 2d DCA 1958).
Here, paragraph 28 deals specifically with actions upon default by either party, and it specifically permits the buyer to "file" a "suit for specific performance" upon the seller's default. Paragraph 24 deals more generally with any dispute arising *704 out of the contract, whether it be for breach of the contract or otherwise, and it requires arbitration. Because the action here involves a default by Kel Homes and an action seeking specific performance, the specific provision of paragraph 28 which allows for a "suit" in the case of Kel Homes' default controls over the more general dispute resolution provision of paragraph 24 that requires arbitration.
In its brief, Kel Homes argues that an interpretation that allows for a suit for specific performance in case of its default renders the provisions of paragraph 24 meaningless. It points out that the court should strive to interpret conflicting provisions of a contract in such a way so as to give meaning to both provisions. See, e.g., Sims v. Clarendon Nat'l Ins. Co., 336 F.Supp.2d 1311, 1319 (S.D.Fla.2004); Seabreeze Rest., Inc. v. Paumgardhen, 639 So.2d 69 (Fla. 2d DCA 1994). However, allowing a suit for specific performance under paragraph 28 does not render the provisions of paragraph 24 meaningless. This court can give both provisions meaning, as is amply reflected in this case. Paragraph 28 permits the Burrises to file a suit solely upon a breach by Kel Homes and solely for the remedy of specific performance. Paragraph 24 requires the parties to arbitrate any and all disputes other than those seeking specific performance for Kel Homes' breach, such as the Burrises' claim for fraud in the inducement. Accordingly, the interpretation proposed by the Burrises gives meaning to both provisions and does not render any portion of the contract meaningless.
Kel Homes also argues that an interpretation that would allow for a suit for specific performance while requiring the fraud count to be arbitrated would be an absurd result. However, the parties may enter into any contract they desire, and they are bound by the language of that contract. Sassano, 664 So.2d at 1004; Sec. First Fed. Sav. & Loan Ass'n v. Jarchin, 479 So.2d 767, 770 (Fla. 5th DCA 1985). This is true no matter how disadvantageous that language later proves to be for one party or the other. Jarchin, 479 So.2d at 770.
Here, the result is not absurd. It simply requires Kel Homes to defend different types of actions in different forums. Regardless of how disadvantageous Kel Homes believes this construction of the contract to be, it is bound by the language of the contract. That language permits a suit for specific performance upon allegations of its breach of the contract.
For all of these reasons, the trial court properly denied Kel Homes' motion to dismiss the specific performance count of the Burrises' complaint. Accordingly, we affirm on this count.

Count for Fraud in the Inducement
As to the count for fraud in the inducement, however, we must reverse the trial court's order dismissing this count with leave to amend and remand for further proceedings because this count clearly falls within the scope of the arbitration provision.
Paragraph 24 of the contract states that "any and all claims, disputes and controversies. . . including, without limitation, any claim of . . . negligent or intentional misrepresentation or nondisclosure in the inducement . . . shall be submitted to binding arbitration." Unlike the situation with the specific performance count, no other provision of the contract references any other possible forum for resolving such a claim. Accordingly, under the clear terms of the contract, the Burrises' claim for fraud in the inducement must be arbitrated. Therefore, we reverse the denial of Kel Homes' motion to dismiss on this count.

*705 Validity of the Arbitration Agreement
In this appeal, the Burrises contend that if any count is found to fall within the scope of the arbitration provision, it would be improper for this court to simply order the parties to arbitration because there has been no determination that the arbitration agreement is valid and enforceable. We agree and remand for further proceedings as to the validity of the arbitration agreement.
When presented with a motion to compel arbitration or a motion to dismiss in favor of arbitration, the trial court must consider three questions: (1) Whether a valid written agreement exists which contains an arbitration clause; (2) Whether an arbitrable issue exist; (3) Whether the right to arbitration has been waived. Alexander v. Minton, 855 So.2d 94, 95 (Fla. 2d DCA 2003); Pulte Home Corp. v. Smith, 823 So.2d 305 (Fla. 2d DCA 2002). When a party challenges the validity of the entire contract containing the agreement to arbitrate, the issue of the validity of the contract itself is one for the arbitrators. Buckeye Check Cashing, Inc. v. Cardegna, ___ U.S. ___, 126 S.Ct. 1204, 1208, 163 L.Ed.2d 1038 (2006); Kaplan v. Kimball Hill Homes Fla., Inc., 915 So.2d 755, 760 (Fla. 2d DCA 2005); Medident Constr., Inc. v. Chappell, 632 So.2d 194, 195 (Fla. 3d DCA 1994). However, when a party specifically challenges only the validity of the arbitration clause, the issue of the validity of the arbitration clause must be determined by the trial court before any referral to arbitration is proper. Buckeye Check Cashing, Inc., 126 S.Ct. at 1208; Alphagraphics Franchising, Inc. v. Stebbins, 617 So.2d 463, 464 (Fla. 4th DCA 1993).
In this case, in response to Kel Homes' motion to dismiss, the Burrises argued that the arbitration provision itself was invalid. They contended that the arbitration provision did not conform to the requirements of the Florida Arbitration Code because it provided for arbitration to be conducted in accordance with the rules of Construction Arbitration Services, Inc., rather than in accordance with the Florida Arbitration Code and because it included a provision that the rules of CAS would apply over those of any "inconsistent state or local law, ordinance or judicial rule." In response, Kel Homes argued that the contract was not subject to the Florida Arbitration Code, but rather was a contract affecting interstate commerce that was subject to the Federal Arbitration Act.
Florida courts have generally refused to enforce arbitration agreements that do not comply with the Florida Arbitration Code or that seek to apply the law of a different state or forum. See, e.g., Avid Eng'g, Inc. v. Orlando Marketplace Ltd., 809 So.2d 1, 3 (Fla. 5th DCA 2001) ("[T]he jurisdiction of the courts cannot be invoked to compel arbitration unless an agreement to arbitrate complies with the Florida Arbitration Code."); Knight v. H.S. Equities, Inc., 280 So.2d 456 (Fla. 4th DCA 1973) (refusing to enforce an arbitration agreement between Florida parties that required the application of New York law because that law conflicted with the Florida Arbitration Code); but see Post Tensioned Eng'g Corp. v. Fairways Plaza Assocs., 412 So.2d 871 (Fla. 3d DCA 1982) (noting that an arbitration provision requiring compliance with the rules of the American Arbitration Association was enforceable because those rules merely expressed the method to be used rather than the substantive law to be applied). Thus, if the Burrises' arguments are correct, the arbitration provision would be unenforceable and their claim for fraud in the inducement could properly proceed in court. However, if the arbitration provision falls under the Federal Arbitration Act, as asserted *706 by Kel Homes, the provision would be enforceable as written. See Riverfront Props., Ltd. v. Max Factor III, 460 So.2d 948 (Fla. 2d DCA 1984) (stating that a foreign choice-of-law provision that would render an arbitration provision unenforceable under the Florida Arbitration Code would nevertheless be enforceable if the contract fell under the Federal Arbitration Act).
The Burrises' argument on this point was made almost as an afterthought at the hearing. They cited no case law and, other than raising this as a possible issue, did not provide significant argument to the trial court. Kel Homes' response to this argument at the hearing was equally off the cuff and essentially told the trial court to "look at the contract." Nothing in the trial court's oral ruling or written order addresses this issue. Moreover, the record on appeal is not sufficiently developed for this court to make a ruling on the validity of the arbitration provision. Accordingly, we remand for further proceedings on this issue. See § 682.03(1), Fla. Stat. (2005) ("If the court shall find that a substantial issue is raised as to the making of the agreement or provision [to arbitrate], it shall summarily hear and determine the issue.").
Affirmed in part, reversed in part, and remanded for further proceedings.
FULMER, C.J., and WHATLEY, J., Concur.
NOTES
[1] The Burrises' original complaint also contained a third count seeking damages for breach of contract. At the hearing on Kel Homes' motion to dismiss, the Burrises withdrew this count of the complaint; thus, this count is not before us and is not affected by this opinion.