[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12870
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cv-01171-MSS-MAP


WORLD OF BEER FRANCHISING, INC.,
a Florida corporation,

Plaintiff - Appellant,

versus

MWB DEVELOPMENT I, LLC,
a Virginia limited liability company,
MWB DEVELOPMENT II, LLC,
a Virginia limited liability company,
MWB DEVELOPMENT III, LLC,
a Virginia limited liability company,
CRAFTHOUSE, LLC,
a Virginia limited liability company,
EVAN S. MATZ,
an individual,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 16, 2017)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

World of Beer Franchising, Inc. ("WOBF") appeals the district court's denial of its motion for a preliminary injunction. WOBF sought to enjoin three of its former franchisees and their principal from using its confidential information, marks, and trade dress and from violating non-competition provisions in their franchise agreements. WOBF similarly sought to enjoin CraftHouse, LLC—an alleged competitor operated by the franchisees' principal—from using WOBF's marks and trade dress. The district court concluded that the dispute resolution provisions in the parties' franchise agreements prohibited WOBF from seeking a preliminary injunction until the parties mediated their dispute, which they had failed to do. On appeal, WOBF argues that the district court incorrectly interpreted the franchise agreements' dispute resolution provisions and, as a result, abused its discretion by denying a preliminary injunction without reaching the merits of WOBF's motion. After careful review, we affirm.

2

# I.    BACKGROUND

## A.    Factual Background

WOBF is a franchisor of World of Beer restaurants, which sell beer, tavern fare, and other authorized products in a pub environment.  The three franchisees in this case, MWB Development I, LLC, MWB Development II, LLC, and MWB Development III, LLC, each entered into a franchise agreement with WOBF to operate a World of Beer restaurant in Virginia.  Evan Matz is the principal and operator of each of the franchisees; Matz personally guaranteed the franchisees' payment and performance under the franchise agreements.

### 1.    The Franchise Agreements' Dispute Resolution and Termination Provisions

All three franchise agreements contain identical dispute resolution and termination provisions.[1]  The dispute resolution provisions are found in Section 23.  The provisions relevant to this case are as follows.

Section 23.1 dictates that the parties submit to non-binding mediation before commencing arbitration, which was required for certain types of disputes:

> During the term of this Agreement, certain disputes may arise between you and us that may be resolvable through mediation.  To facilitate such resolution, you and we agree each party must, before commencing any arbitration proceeding, submit the dispute to non-binding mediation . . . Nevertheless, both you and we have the right in

---

[1] The parties acknowledge that the franchise agreements differ to some extent, but they agree that all of the provisions at issue in this appeal are identical.

a proper case to obtain temporary restraining orders and temporary or preliminary injunctive relief from a court of competent jurisdiction. However, the parties must immediately and contemporaneously submit the dispute for non-binding mediation.  If the dispute between you and us cannot be resolved through mediation within 60 days following the appointment of the mediator, the parties must submit the dispute to arbitration subject to the following terms and conditions.

Doc. 1-2 at 52.[2]

Section 23.2 sets forth the "terms and conditions" of arbitration:

EXCEPT FOR DISPUTES . . . RELATED TO OR BASED ON THE MARKS (WHICH AT OUR SOLE OPTION MAY BE SUBMITTED TO ANY COURT OF COMPETENT JURISDICTION) AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED BY THIS AGREEMENT, ANY LITIGATION, CLAIM, DISPUTE, SUIT, ACTION, CONTROVERSY, PROCEEDING OR OTHERWISE ("DISPUTE") BETWEEN OR INVOLVING YOU AND US . . . WHICH [IS] NOT RESOLVED WITHIN 45 DAYS OF NOTICE FROM EITHER YOU OR WE TO THE OTHER, WILL BE SUBMITTED TO ARBITRATION TO THE PLACE OF BUSINESS OF THE AMERICAN ARBITRATION ASSOCIATION CLOSEST TO OUR HEADQUARTERS IN TAMPA, FLORIDA.  THE ARBITRATION WILL BE CONDUCTED BY THE AMERICAN ARBITRATION ASSOCIATION PURSUANT TO ITS COMMERCIAL ARBITRATION RULES. . . .

*Id.* at 52-53 (emphasis removed).

Section 23.5 then reiterates that a preliminary injunction may be sought, as long as the dispute is contemporaneously submitted for arbitration on the merits.

NOTHING IN THIS AGREEMENT WILL PREVENT YOU OR WE FROM OBTAINING TEMPORARY RESTRAINING ORDERS AND TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF

---

[2] Unless otherwise specified, all citations in the form "Doc. __" refer to the district court docket entries.

FROM A COURT OF COMPETENT JURISDICTION. HOWEVER, YOU AND WE MUST CONTEMPORANEOUSLY SUBMIT A DISPUTE FOR ARBITRATION ON THE MERITS.

*Id.* at 54 (emphasis removed).

The franchise agreements also set out, in Section 20, the parties' rights and obligations upon the agreements' termination. For example, the agreements provide that termination cuts off the franchisees' rights to use any of WOBF's confidential information or marks. The agreements also contain non-competition provisions prohibiting the franchisees from having any interest in a competitive business for a period of two years after termination.

### 2.    Matz Terminated the Franchise Agreements.

For several years, Matz successfully operated the franchisees' World of Beer restaurants. But in early 2017, his relationship with WOBF soured. WOBF informed Matz that the franchisees were violating the franchise agreements by failing to "acquire all services, supplies, materials, ingredients, food and beverage products" from WOBF's approved suppliers. Doc. 1-8 at 2. Matz denied WOBF's accusations, but he and the franchisees nonetheless agreed to a consensual termination of the franchise agreements, which included debranding the restaurants within 90 days. Several months later, Matz sent WOBF a follow-up letter confirming that the franchisees had in fact debranded. Matz then formed

CraftHouse, LLC, and reopened the franchisees' former World of Beer restaurants under the CraftHouse name.

## B.    Procedural History

Upon discovering that Matz had reopened the restaurants, WOBF filed suit against him, the franchisees, and CraftHouse (to whom we refer collectively as "Matz") in the district court.  WOBF alleged infringement of its marks and trade dress, unfair competition, and violation of the non-competition provisions in the franchise agreements.  WOBF acknowledged that the franchise agreements contained an arbitration provision and represented in the complaint that it would initiate arbitration simultaneously with filing suit.  WOBF did not, however, refer to the franchise agreements' mediation provisions.

WOBF then moved for a preliminary injunction enjoining the conduct about which WOBF complained—that is, relief on the merits.  After the district court set a hearing on the motion, Matz moved to cancel or continue the hearing, arguing that WOBF had failed to comply with the franchise agreements' dispute resolution provisions by filing suit before commencing mediation or arbitration.  In response, WOBF argued that Matz had overlooked Section 23.5 of the franchise agreements, which permits the pursuit of preliminary injunctive relief when the dispute is contemporaneously submitted to arbitration.  WOBF asserted that it had complied with Section 23.5 because it had already submitted the dispute to the American

Arbitration Association. In addition, WOBF represented that it had previously notified Matz's counsel that it was initiating arbitration, provided counsel with a copy of the statement of claim in arbitration, and asked whether Matz had "any preference as to mediating through the AAA or selecting a private mediator." Doc. 33 at 14. But, according to WOBF, Matz failed to respond until the day before WOBF filed its response to Matz's motion to cancel the hearing. WOBF represented that it was "willing to mediate this dispute," but not until after the preliminary injunction hearing. *Id.*

The district court granted Matz's motion to cancel the hearing and directed the parties to mediate "in accordance with their Franchise Agreements." Doc. 37 at 2. It also denied WOBF's motion for a preliminary injunction without prejudice, noting that the preliminary injunction hearing was continued only until "after the [p]arties have completed their contemporaneous obligation to mediate this matter." *Id.* at 2-3. This appeal followed.

## II.    STANDARD OF REVIEW

Although we review the district court's ruling on a motion for a preliminary injunction for an abuse of discretion, we review *de novo* any legal conclusions that underlie the district court's ruling. *Stewart v. KHD Deutz of Am., Corp.*, 980 F.2d 698, 701-02 (11th Cir. 1993). Because contract interpretation is a legal question,

we review the district court's interpretation of the franchise agreements *de novo*. *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004).

### III.    DISCUSSION

The district court denied WOBF's motion for a preliminary injunction after concluding explicitly that the franchise agreements required WOBF to submit its dispute with Matz to mediation before obtaining a preliminary injunction and, implicitly, that WOBF had failed to satisfy this contractual requirement.  The court did not reach the merits of WOBF's motion.  Thus, we are called upon only to decide whether the district court erred in interpreting the franchise agreements' dispute resolution provisions.  We conclude that it did not.[3]

Under Florida law,[4] a written contract must be construed so as "to give effect to the parties' intentions."  *In re Managed Care*, 756 F.3d 1222, 1232 (11th Cir. 2014).  "In interpreting a contract under Florida law, we give effect to the plain language of contracts when that language is clear and unambiguous."  *Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (internal quotation marks omitted).  We must construe the

---

[3] Because we agree with the district court that WOBF failed to satisfy its contractual obligation to submit the dispute to mediation before obtaining a preliminary injunction, we do not address WOBF's separate argument that the district court abused its discretion by invoking its inherent authority to control its docket when it ordered the parties to mediate.

[4] The parties do not dispute that Florida law governs the interpretation of the franchise agreements.  Indeed, all three agreements contain choice of law provisions that select Florida law.  Docs. 1-2 at 50; 1-4 at 51-52; 1-6 at 51.

8

contract as a whole, *see Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 919 (11th Cir. 1995), and "must read the contract to give meaning to each and every word it contains." *Equity Lifestyle Props.*, 556 F.3d at 1242. "[W]e avoid treating a word as redundant or mere surplusage if any meaning, reasonable and consistent with other parts, can be given to it." *Id.* (internal quotation marks omitted). "We may not rewrite [a] contract." *Everhart v. Drake Mgmt., Inc.*, 627 F.2d 686, 690 (5th Cir. 1980).[5]

WOBF concedes that the franchise agreements' dispute resolution provisions permit it to seek a preliminary injunction only "as long as it also submits the dispute to arbitration and mediation on the merits." Appellant's Br. at 23. It further acknowledges that, upon seeking injunctive relief, it "needs to immediately and contemporaneously submit the dispute to mediation." *Id.* at 22. WOBF presents two arguments why the district court erred in requiring the parties to mediate before hearing the motion for a preliminary injunction. First, it argues that the franchise agreements' dispute resolution provisions did not require it to mediate before obtaining a preliminary injunction because the claims on which it sought relief are not subject to arbitration. Second, and alternatively, WOBF argues that even if mediation was required, WOBF took sufficient steps toward

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

mediation to satisfy its obligations under the dispute resolution provisions. We discuss these arguments in turn.

## A.    The Franchise Agreements Required WOBF to Mediate Before Seeking a Preliminary Injunction.

The district court denied WOBF's motion for a preliminary injunction because it concluded that the parties had a "contemporaneous obligation to mediate this matter," which they had failed to satisfy. Doc. 37 at 2. WOBF argues that the district court erred because it: (1) misinterpreted Section 23.1 of the franchise agreements and (2) failed to consider Section 23.5, which it argues is the provision that most directly addresses the dispute resolution procedure when a party wishes to pursue a preliminary injunction.

### 1.    Section 23.1 Required "Immediate and Contemporaneous" Submission of the Dispute to Mediation.

WOBF first argues that the district court wrongly interpreted Section 23.1 to mean that WOBF was required to mediate its dispute with Matz before seeking a preliminary injunction. Even though WOBF's argument grows out of Section 23.1, it is rooted in Section 23.2. Again, Section 23.2 provides that:

> EXCEPT FOR DISPUTES . . . RELATED TO OR BASED ON THE MARKS . . . ANY LITIGATION, CLAIM, DISPUTE, SUIT, ACTION, CONTROVERSY, PROCEEDING OR OTHERWISE ("DISPUTE") BETWEEN OR INVOLVING YOU AND US . . . WILL BE SUBMITTED TO ARBITRATION . . . .

10

Doc. 1-2 at 52-53 (emphasis removed).  WOBF contends that this dispute is "related to" WOBF's marks, so the exception in Section 23.2 removes it from the arbitration requirement.  WOBF then relies on one clause in Section 23.1 in isolation:  "[Y]ou and we agree that each party must, before commencing any arbitration proceeding, submit the dispute to non-binding mediation . . . ."  *Id.* at 52.  WOBF interprets that clause as requiring mediation only when arbitration also is required.  WOBF thus argues that, because this case is "related to" WOBF's marks and therefore falls outside of Section 23.1's arbitration requirement, it also must fall outside of Section 23.1's mediation requirement.

We reject WOBF's interpretation of these provisions for two reasons.  First, WOBF's interpretation is inconsistent with Section 23.1 when read as a whole.  It is true that Section 23.1's first two sentences, on which WOBF relies, require the parties to submit to mediation before commencing any arbitration proceeding:

> During the term of this Agreement, certain disputes may arise between you and us that may be resolvable through mediation.  To facilitate such resolution, you and we agree each party must, before commencing any arbitration proceeding, submit the dispute to non-binding mediation . . . .

*Id.*  But language appearing later in Section 23.1 provides for mediation without reference to arbitration:

> Nevertheless, both you and we have the right in a proper case to obtain temporary restraining orders and temporary or preliminary injunctive relief from a court of competent jurisdiction.  However, the

11

parties must immediately and contemporaneously submit the dispute for non-binding mediation.

*Id.*  This latter provision appears to require mediation any time a party seeks preliminary injunctive relief.  Reading Section 23.1's first two sentences to be consistent with the latter provision, as we must, *see Hibiscus Assocs. Ltd.*, 50 F.3d at 919, we conclude that the first two sentences are best interpreted as a temporal requirement dictating the timing of mediation and arbitration, while the latter provision is the requirement to mediate.  Contrary to WOBF's argument, nothing in Section 23.1's first two sentences expressly limits the mediation requirement to circumstances where the dispute is arbitrable.  Rather, Section 23.1's first two sentences say that the parties must mediate "*before* commencing any arbitration proceeding."  Doc. 1-2 at 52 (emphasis added).  Read as a temporal requirement, this portion of Section 23.1 is entirely consistent with the broader language that appears in the latter provision:  To obtain a preliminary injunction, the parties must "immediately and contemporaneously submit the dispute" for mediation, *id.*, regardless of whether the dispute is arbitrable.

Second, WOBF incorrectly asserts that this case is "related to or based on" WOBF's marks and therefore falls outside of Section 23.2's arbitration requirement.[6]  While WOBF did allege infringement of its marks, it also alleged

---

[6] Matz argues that we should disregard this argument because WOBF did not raise it in the district court.  While that is indeed grounds for declining to consider an argument on appeal,

12

that Matz:  (1) violated the non-competition provisions in the franchise agreements, (2) used WOBF's confidential information, and (3) infringed WOBF's trade dress.  It sought preliminary injunctive relief on the merits of all these claims.  These claims are in no way "related to or based on" WOBF's marks because WOBF could raise them independently of the alleged infringement.

WOBF all but conceded this point in its complaint.  It alleged:

> Under the franchise agreements, the parties agreed to arbitrate most disputes but are permitted to seek interim injunctive relief and other relief related to the use of Plaintiff's marks.  Accordingly, contemporaneously with filing this suit WOBF will initiate an arbitration proceeding against Defendants for the claims subject to the arbitration proceeding.

Doc. 1 at 2.  If all the claims in this case fell within the arbitration exception in Section 23.2, as WOBF now contends, then WOBF had no reason to initiate arbitration or mention it in the complaint.  Regardless of whether WOBF might be permitted to amend its pleadings, its complaint shows its recognition that the franchise agreements called for arbitration on at least some claims in this case.  This recognition is consistent with Section 23.2's plain language.  So, even if

---

see *Access Now, Inc. v. Southwest Airlines Co.*¸ 385 F.3d 1324, 1331 (11th Cir. 2004), we choose to address the argument to explain why it fails even if properly preserved.

WOBF were correct that Section 23.1 requires mediation only as a precursor to arbitrable disputes, WOBF would still not be excused from mediation in this case.[7]

### 2.    Section 23.5 Does Not Override Section 23.1.

WOBF next argues that the district court should have considered Section 23.5 and afforded it controlling weight over Section 23.1 because it addresses the procedure for obtaining a preliminary injunction more specifically than does Section 23.1.  *See Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. Dist. Ct. App. 2006) ("[I]t is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject.").  Again, Section 23.5 provides:

> NOTHING IN THIS AGREEMENT WILL PREVENT YOU OR WE FROM OBTAINING TEMPORARY RESTRAINING ORDERS AND TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF FROM A COURT OF COMPETENT JURISDICTION.  HOWEVER, YOU AND WE MUST CONTEMPORANEOUSLY SUBMIT A DISPUTE FOR ARBITRATION ON THE MERITS.

Doc. 1-2 at 54 (emphasis removed).

WOBF focuses on the beginning of Section 23.5, arguing that it "explicitly allows a party to seek injunctive relief despite anything else in the contract . . ."

---

[7] WOBF also argues that Section 23.1 may not apply at all because it concerns disputes that occur "during the term of [the franchise agreement,]" and its dispute with Matz is based entirely on post-termination conduct.  Appellant's Reply Br. at 8.  We need not address that argument in detail, however, because Section 23.7 provides for the survival of Section 23 notwithstanding the franchise agreements' termination.  *See* Doc. 1-2 at 54 ("This Section 23 continues in full force and effect subsequent to and notwithstanding the expiration or termination of this agreement for any reason.") (emphasis removed).

Appellant's Br. at 24.  But to the extent WOBF argues that we should interpret Section 23.5 as eliminating the mediation requirement in Section 23.1, we decline to do so.  Our interpretation of the franchise agreements must "give effect . . . to all provisions of the agreement[s] if it can be reasonably done."  *McArthur v. A.A. Green & Co. of Fla., Inc.*, 637 So. 2d 311, 311 (Fla. Dist. Ct. App. 1994).  And here, Sections 23.1 and 23.5 are easily read together.  Section 23.1 requires the parties to submit disputes for mediation "immediately and contemporaneously" with a motion for a preliminary injunction; Section 23.5 requires them to submit disputes for arbitration "contemporaneously" with such a motion.  Doc. 1-2 at 52, 54.  Moreover, Section 23.1 makes clear how the arbitration and mediation requirements fit together temporally:  The parties must mediate "before" a party commences arbitration.  *Id.* at 52.  The plainest interpretation of those provisions is that the parties intended Sections 23.1 and 23.5 to act as companion provisions.  To obtain a preliminary injunction, a party must contemporaneously submit the dispute to both arbitration *and* mediation, and if mediation fails to resolve the dispute "within 60 days following the appointment of the mediator," the dispute must be submitted to arbitration.  *Id.*  Because we can reasonably read Sections 23.1 and 23.5 together, we hold that Section 23.5 does not override Section 23.1.

**B.    WOBF Failed to Submit the Dispute to Mediation.**

As we have explained, WOBF and the franchisees contracted to "immediately and contemporaneously submit" any disputes to mediation when seeking a preliminary injunction.[8] *Id.* Having concluded that WOBF was required to submit its dispute with Matz to mediation, we must now decide whether the district court erred in deciding that WOBF failed to do so.[9]

In its response to Matz's motion to cancel the preliminary injunction hearing, WOBF represented that on June 13, 2017—more than two weeks after it filed its motion for a preliminary injunction—it asked Matz whether he had "any preference as to mediating through the AAA or selecting a private mediator." Doc. 33 at 14. WOBF argues that this attempt to coordinate mediation satisfied its obligations under the dispute resolution provisions and that it is "unclear what else [it] could have done to 'submit' the case to mediation." Appellant's Reply Br. at 8. We are unpersuaded. Section 23.1 requires mediation to be conducted under the

---

[8] In its reply brief, WOBF argues that the event that triggers the mediation obligation in Section 23.1 is "obtaining" rather than merely "seeking" a preliminary injunction. Appellant's Reply Br. at 6. Thus, according to WOBF, it was not obligated to submit its dispute with Matz to mediation until the district court granted its motion for a preliminary injunction. But because WOBF raised that argument for the first time in its reply brief, we decline to consider it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682-83 (11th Cir. 2014) (explaining that arguments raised for the first time in a reply brief "come too late" for our consideration). We note further that the argument appears to be inconsistent with the position WOBF has taken previously. *See* Appellant's Br. at 22 ("[A party] can first *seek* injunctive relief but needs to immediately and contemporaneously submit the dispute to mediation." (emphasis added)).

[9] The parties argue about what "immediately" and "contemporaneously" mean in the context of Section 23.1's mediation requirement. We need not consider those arguments, however, because we conclude that WOBF failed to submit the dispute to mediation at all.

16

American Arbitration Association's Commercial Mediation Rules ("AAA Rules").

Rule M-2 of the AAA Rules governs the initiation of mediation, providing that:

> Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. . . .

*Commercial Arbitration Rules and Mediation Procedures*, AM. ARBITRATION ASS'N 39, https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (last visited Sept. 21, 2017).  Thus, it was possible for WOBF to initiate or "submit" the case to mediation even without Matz's cooperation.  Because WOBF failed to do so, the district court did not abuse its discretion in denying WOBF's motion for a preliminary injunction.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's order denying the motion for a preliminary injunction.

**AFFIRMED.**