IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MARISOL ROSA,

        Appellant,

v.

Case No.  5D21-3005
LT Case No. 2019-CA-014520-O

SAFEPOINT INSURANCE COMPANY,

        Appellee.

_____/

Opinion filed November 14, 2022

Appeal from the Circuit Court
for Orange County,
Donald A. Myers, Jr., Judge.

Mark A. Nation, of The Nation
Law Firm, Longwood, for Appellant.

Patrick M. Chidnese and Frieda C.
Lindroth, of Bickford & Chidnese, LLP,
Tampa, for Appellee.

Mark D. Tinker, of Cole, Scott &
Kissane, P.A., Amicus Curiae for the
Florida Property & Casualty Association

WOZNIAK, J.

In this insurance coverage dispute, Marisol Rosa ("Rosa") appeals a final summary judgment entered in favor of Safepoint Insurance Company ("Safepoint"). For the reasons expressed below, we conclude that an exclusion contained in an endorsement to the policy applied to the loss at issue, precluding coverage. Accordingly, we affirm.

Safepoint insured Rosa's dwelling pursuant to a homeowners insurance policy. The dwelling was damaged by the overflow of water from the plumbing system. The parties agree that the loss resulted from the deterioration of cast iron pipes that was caused by "rust or other corrosion." After investigating the damage, Safepoint determined the loss was excluded from coverage under the policy's Water Damage Exclusion Endorsement. Rosa then filed suit, seeking to enforce the policy and to recover the costs she incurred in repairing her dwelling due to the water damage.

The issue in this appeal is whether the policy covers the subject loss, and the answer depends on the meaning of the term "act of nature" in the policy. The introductory paragraph of the policy's Exclusions section states that the policy does "not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . ." The definition of "Water Damage" following that introductory language was replaced by an

2

endorsement to the policy, the Water Damage Exclusion Endorsement, which defines "Water Damage" as including:

> d. Accidental or intentional discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance; . . . .
>
> . . . .
>
> Caused by or resulting from human or animal, forces or any act of nature.

Thus, if the rust or other corrosion that caused this loss was an act of nature, Safepoint correctly denied coverage. But, if the rust or other corrosion was not an act of nature, the Water Damage Exclusion Endorsement did not preclude coverage.

The interpretation of an insurance policy is a question of law reviewed de novo. *Principal Life Ins. Co. v. Halstead, as Tr. of Rebecca D. McIntosh Revocable Living Tr.*, 310 So. 3d 500, 502 (Fla. 5th DCA 2020). The guiding principle for insurance policy interpretation is that the policy must be read as a whole, affording words their plain meaning as bargained for by the parties. *See* § 627.419(1), Fla. Stat. (2016) (requiring every insurance contract "be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto"); *see also Auto-*

3

*Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) ("Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties.").

The Fourth District Court of Appeal aptly applied these principles when it interpreted the phrase "act of nature" in the context of a nearly identical insurance policy. In *Dodge v. People's Trust Insurance Co.*, 321 So. 3d 831 (Fla. 4th DCA 2021), the insureds argued, as does Rosa here, that "act of nature" is synonymous with "act of God" and only occurs when a singular act or external force occurs, finding solace in *Black's Law Dictionary*'s definition of "act of God." *Act of God*, *Black's Law Dictionary* (11th ed. 2019) (stating phrase is "[a]lso termed act of nature"). Our sister court rejected this argument. Citing two out-of-state cases,[1] the Fourth District Court held that "the everyday interpretation of the phrase 'act of nature' is not as narrow or technical as the [insureds] propose" but rather is to be given its ordinary meaning as "something that naturally occurs." *Dodge*, 321 So. 3d at 834. We

---

[1] *Holben v. GC Acquisition Corp.*, No. 1996CA00261, 1997 WL 115843, at *2 (Ohio Ct. App. Mar. 3, 1997) ("The natural accumulation of ice and snow is one which accumulates as a result of an act of nature as opposed to an unnatural accumulation that results from an act of a person."); *Coyle v. City of Waterbury*, No. 096884, 1991 WL 270291, at *1 (Conn. Super. Ct. Dec. 8, 1991) (refusing to hold that growth of a tree root planted on land abutting the sidewalk is an affirmative act of the landowner because "[t]he growth of the tree, root and all, is an act of nature over which the landowner has no control").

find the Fourth District Court's reasoning persuasive and agree that in the context of this policy

> the phrase "act of nature" does not require an uncontrollable or unpreventable event. . . . Here, the loss was caused by rust or corrosion. Corrosion, the chemical reaction between iron and moist air, is an act of nature or a naturally occurring force. Thus, the rust or corrosion occurred because of a natural act. As a result, the Water Damage Exclusion endorsement applied to this loss.

*Id.* at 835.

We also find persuasive the Supreme Judicial Court of Maine's decision in *Bibeau v. Concord General Mutual Insurance Co.*, wherein the homeowner sought policy coverage after his home was damaged as the result of earth moving under the foundation of the home. 244 A.3d 712, 714 (Me. 2021). The policy excluded losses caused by, inter alia, "[a]ny other earth movement including earth sinking, rising or shifting; caused by or resulting from human or animal forces or any act of nature." *Id.* at 715. The evidence was conflicting whether the movement was caused by a water line leak that compromised the integrity of the foundation or by the settling of unprepared or uncontrolled fill underlying the foundation. The Maine court concluded that the cause was irrelevant because the policy's earth movement exclusion clearly applied to *any* earth movement, not just natural disasters, and included earth movement resulting from human or natural

5

forces: "Such losses are excluded even if they were caused concurrently by a covered peril." *Id.* at 718 (citation omitted). What we take from *Bibeau* is that, in context, "any act of nature" is not limited to natural disasters, i.e., an act of God.

We also note additional contextual clues present in the policy that further support our conclusion that any "act of nature" is an act that occurs naturally and encompasses rust or other corrosion. The policy at issue references "an Act of God" more than once in its Cancellation and Nonrenewal sections. "[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 171 (Fla. 1st DCA 2015) (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 25, at 170 (2012)); *see also Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006) ("As a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended."). In light of the entire policy, the use of "an Act of God" and "any act of nature" separately indicates each phrase has a different meaning for the purpose of this homeowners insurance policy. Relatedly, the choice of the drafters to capitalize "an Act of God" stands in contradiction to the uncapitalized use of "any act of nature" in

the exclusion. This distinction further undermines Rosa's argument that the terms "any act of nature" and "an Act of God" are interchangeable within the policy. Because the phrase "any act of nature" is made expressly applicable to the Water Damage Exclusion Endorsement, and based on our conclusion that the phrase is to be given its ordinary meaning, we need not delve further into the meaning of the phrase "an Act of God."

In sum, the rust or other corrosion that occurred in the pipes in Rosa's dwelling, regardless of whether it was perhaps preventable or controllable, was a naturally occurring force and thus an act of nature. As an act of nature, the loss came within the policy exclusion for "any act of nature." Consequently, Safepoint correctly denied coverage.

AFFIRMED.

SASSO and NARDELLA, JJ., concur.